FIRST NATIONAL BANK OF DEVILS LAKE v. MANCHESTER FIRE ASSURANCE COMPANY.[1]

February 6, 1896.

Nos. 9729—(269).

**Fire Insurance—Forfeiture of Policy—Waiver.**

After a loss on a fire insurance policy, which was subject to forfeiture for a breach of a condition therein against incumbering the property, the defendant by its adjuster, without knowledge of such breach, took possession of and sold the salvage by virtue of a claim under the policy; but after learning, on the next day after the sale, of the breach, it took no steps at any time to rescind the sale, or to provide for the payment of the purchase price to the assured, or to do any act to restore to him what it took from him under the policy. *Held*, that it thereby waived its right to treat the policy as forfeited.

**Same—Authority of Adjuster.**

Evidence considered, and *held*, that the defendant's adjuster had authority to waive the breach in the condition of the policy by his action and conduct in reference to the salvage.

Appeal by defendant from an order of the district court for Ramsey county, Otis, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $1,675.44. Affirmed.

*Kueffner, Fauntleroy & Rice* and *Samuel E. Hall*, for appellant.

*Bunn & Hadley*, for respondent.

[1] Reported in 66 N. W. 136.

START, C. J.    This is an action to recover upon an insurance policy issued by the defendant to the Devils Lake Mill Company, covering grain, flour, bran, and seeds, and assigned to the plaintiff after the loss by fire of the property insured.    The defense is that, prior to the fire, certain chattel mortgages were placed upon the property, within the prohibition of the policy.    It is admitted by the plaintiff that at the time of the fire the policy had become subject to forfeiture, because of the execution of the chattel mortgages; but it claims that the defendant waived the forfeiture after the fire by the action of its adjuster.    There was a verdict for the plaintiff, and the defendant appealed from an order denying its motion for a new trial.

Two questions are raised by the assignment of errors:    First, that what the adjuster did or omitted to do in the premises did not constitute a waiver of the forfeiture; and, second, that the plaintiff failed to show that the adjuster had any authority to waive it.

1. The evidence as to what the adjuster did in fact do, and the purpose for which it was done, is conflicting, but there was evidence tending to establish the following facts:    That Mr. Cobben, the adjuster of the defendant, and Mr. French, an adjuster for other insurance companies which had policies covering the same property as that of the defendant, went to the place of the loss five days after it occurred, and had an interview with the manager of the mill company, Mr. Schmidt, with reference to the loss, in which they asserted the right of the insurance companies to the salvage; that is, to some 1,500 bushels of wheat damaged by the fire, which was a part of the property insured.    This right was asserted under a provision in the policies to the effect that, in case of loss by fire, it was optional with the insurance companies to take the residue of the insured property not destroyed at an appraised valuation or at a valuation agreed upon by the parties, but the manager of the assured protested, and insisted that the salvage belonged to his company.    The adjusters, however, insisted upon exercising the option, and notified the manager that they proposed to sell the wheat. Thereupon he acquiesced in the sale, and the wheat was accordingly sold by the adjuster French, for the benefit of all of the insurance companies, to a Mr. Martin, for the sum of $305.    The defendant's adjuster, Cobben, was present during the whole transaction, and

consulted with French concerning the sale, and took part therein. Neither of the adjusters knew until the next day after the sale that the chattel mortgages had been given, and that for this reason the policies of their respective companies were subject to forfeiture, but each of them learned, on the day following the sale, that the mortgages had been given, and each of them then abandoned the adjustment of the loss, and departed without taking any action to procure a rescission of the sale, or to recall any action they had taken in the premises, or attempting to restore the assured to its position before the sale, and without saying anything to the assured about the salvage or the chattel mortgages. The defendant's adjuster simply notified the manager of the assured that he was not going to do anything further about adjusting the loss. The purchaser at the sale took possession of the salvage wheat, and shipped it away; and neither he nor the defendant nor any other company or person has ever offered to return the salvage to the assured, or to pay the purchase price thereof to it There is no evidence in the case that the defendant ever received any part of such purchase price, or that it or any of the other insurance companies ever directed the same to be paid to the assured.

There was evidence on the part of the defendant tending to show that the sale was not made for the benefit of the insurance companies, but that the salvage was sold by agreement for whom it might concern,—that is, for the benefit of the party who should be found entitled to the salvage; also, that some six months after the sale the purchaser tendered the money to the manager of the assured. But, under the evidence and the charge of the court, the jury must have found the facts substantially as we have stated them. If, then, the defendant's adjuster was authorized to do what he did do, he thereby waived for the defendant the right to elect to treat the policy as forfeited on account of the chattel mortgage. If the adjuster had taken possession of the salvage with knowledge of the existence of the chattel mortgages, there could be no question but that his act would have been a waiver of the forfeiture, for there was no claim or pretense of any right to the salvage except by virtue of the option given to the defendant by the terms of the policy. The taking and selling of the salvage was an express recognition and assertion that the policy was in force. But, when this

was done, the adjuster had no knowledge that the policy was subject to forfeiture on account of the mortgages; hence this act, standing alone, did not constitute a waiver, which necessarily implies knowledge of the existence of the right which is relinquished, where conditions do not exist constituting an estoppel.    St. Paul F. & M. Ins. Co. v. Parsons, 47 Minn. 352, 50 N. W. 240.

But having taken and sold the salvage under the policy, and thereby deprived the assured of it, the defendant's adjuster was bound to do all that could reasonably be done to place the assured in the position it was in before the taking and selling of the salvage. If he would relieve the defendant from the consequences of his acts in the premises, he was bound to do all that he reasonably could to undo his act, and to place the assured in its former position before he acted; and his failure to make any effort to do this after he was fully advised of the rights of the defendant was an affirmance and ratification of his previous acts, and the case stands precisely as if the acts had been originally done with knowledge of the mortgages, and the defendant's right to elect to treat the policy as forfeited was waived.

The assured, after protest, assented to the sale of the salvage by the adjusters for the benefit of the defendant and the other companies, by virtue of the claim made by them under the policy, and the title passed to the purchaser, and the right to the purchase price accrued to the companies, and not to the assured.    But before the salvage was removed by the purchaser, and on the next day after the defendant's adjuster learned that its policy was subject to forfeiture, he, instead of making any efforts to procure a rescission of the sale or to place the assured in its former position, simply abandoned the work of adjustment, and departed, without notifying the assured of the election of the defendant to forfeit the policy.    The conduct of the adjuster after he learned that the policy was subject to forfeiture is radically inconsistent with the claim now made that the policy is forfeited.

The case of Schreiber v. German-Amer. H. Ins. Co., 43 Minn. 367, 45 N. W. 708, holds that an act done in recognition of the validity of a policy in ignorance of the fact that it is subject to forfeiture will be ratified, and constitute a waiver, by a failure to promptly restore that which was obtained by virtue of the policy.    In the

case cited, the policy was subject to forfeiture on account of the assured's misrepresentations as to incumbrances; but the insurance company, without knowledge of the fact, collected the premium note of the assured by suit, and never returned or offered to return him the amount so collected after it learned of the breach in the condition of the policy; and it was held that the company, by its failure to act after it was advised of its rights, waived its right to treat the policy as forfeited, for it was the company's duty, as soon as it learned of the breach of the condition in the policy, to determine whether it would abide by the policy and retain the money collected, or restore it, and elect to avoid the policy. So, in the case at bar, the defendant having failed to return the salvage or its purchase price to the assured, it must be held to have elected to abide by its assertion of the validity of the policy made by it in taking and selling the salvage by virtue thereof.

2. We have thus far assumed the authority of the defendant's adjuster in the premises, but, upon a consideration of the evidence, we hold that his authority was established prima facie, at least.

The defendant offered no evidence as to his actual authority, and prima facie his powers were coextensive with the business intrusted to his care. He was intrusted with the adjustment of the loss in question. This is the reasonable inference from the unqualified admission of the defendant upon the trial that he was its adjuster and the uncontradicted evidence given on the trial. An adjuster is he who determines the amount of a claim, as a claim against an insurance company. Anderson, Law Dict. The adjuster, Mr. Cobben, testified that he was at the place of the loss as the adjuster of the defendant, and that no other person was present who had authority to act for it except himself, and that in what he there undertook to do he acted for it; and further, that, where grain in elevators is destroyed, it is customary for the assured and the companies to agree the first thing to dispose of the débris, for whomsoever it may concern. The policy in this case also provided for dealing with the salvage under certain conditions in the adjustment of the loss. That the adjuster of the defendant did undertake to act in the matter of the adjustment of this loss, and did deal with the salvage, is shown by the evidence. If, in anything which he did, he exceeded his authority, it was a matter within the exclusive knowledge of the

defendant; and, in the absence of any evidence on its part that he did exceed his authority, it is clear that his authority in the premises was prima facie established by the evidence.   Swain v. Agricultural Ins. Co., 37 Minn. 390, 34 N. W. 738; Aetna Ins. Co. v. Shryer, 85 Ind. 362; Aetna Ins. Co. v. Maguire, 51 Ill. 342.

Order affirmed.