FIRST NATIONAL BANK OF DEVILS LAKE v. LANCASHIRE IN-
SURANCE COMPANY.[1]

SAME v. HOME INSURANCE COMPANY.

July 13, 1896.

Nos. 10,026—(252).

**Insurance—Authority of Adjusters—Salvage—Waiver of Conditions.**

The insured held policies issued by a number of different insurers. A loss
by fire occurred. The adjusters of two of these insurers came upon the scene,
and, by the consent of the insured, sold the salvage. The next day the ad-
juster of the defendant insurers came also upon the scene, and had conversa-
tions with the insured. In actions on the policies of the latter insurers, *held*,
from the evidence as to these conversations, and the other evidence in the case,
the jury were justified in finding that the latter adjuster ratified the acts of
the other adjusters in selling the salvage; that, under the terms of the policy,
he is presumed to have had authority to make arrangements for the sale of
such salvage, and consequently to ratify the sale already made; and that (fol-
lowing First Nat. Bank v. Manchester Fire Assur. Co., 64 Minn. 96), retaining
the proceeds of such sale, or neglecting to see that such proceeds were prompt-
ly returned to the insured after the discovery by defendants that the policies
in suit had been forfeited before the fire, waived such forfeiture.

Appeal by defendant in each action from an order of the district
court for Ramsey county, Otis, J., denying a motion for a new trial,
after verdicts in favor of plaintiff, as against Lancashire Insurance
Company for $590.93, and as against Home Insurance Company for
$2,363.72. Affirmed.

*Kueffner, Fauntleroy & Rice* and *Samuel E. Hall*, for appellants.
*Hadley & Armstrong*, for respondent.

CANTY, J.[2] These two actions were tried together. Each was
brought on a fire insurance policy, to recover for a loss by the same
fire. Plaintiff had a verdict in each case, and from an order denying
a new trial in each the respective defendants appeal.

The insurance was on the same property, and the actions grow out
of the same fire, as that mentioned in First Nat. Bank v. Manchester
Fire Assur. Co., 64 Minn. 96, 66 N. W. 136. All of the conditions are

[1] Reported in 68 N. W. 1.      [2] Mitchell, J., absent, took no part.

the same as they were in that case, except that the adjuster of these two insurance companies took no part in the sale of the damaged wheat, and did not arrive on the scene until the next day after the sale, and the question is whether he subsequently ratified that sale so as to bind these companies.    Most of the evidence introduced on the trial of that action was used on the trial of these actions, and with it additional evidence was given, bearing on such question of ratification.    Appellants contend that there is no evidence to show that there had been such a ratification, even if their adjuster had authority to ratify it.    They admitted on the trial that a Mr. Munn was the adjuster of both companies, and represented them, as such, in this matter.

A. M. Schmidt, the manager of the insured, the Devils Lake Mill Company, was called as a witness, and testified that the adjusters of some of the other insurance companies (French and Cobben) arrived at Devils Lake, North Dakota, the place of the fire, on Monday, January 16, 1893, and on that day made the sale of the salvage wheat to Martin; that on the next day, Tuesday, the witness was introduced to Munn by Cobben.    He further testified:

"Q. Well, state what was said about that [the salvage].    A. Why, Mr. Munn told me that he wanted to go down and look at the place where the fire was, and I told him that I thought they were loading the wheat there, and it then occurred; and I asked him about the salvage, · and he says:    'Well, that is all right.    Whatever Mr. French does,' he says, 'is all right.'    *    *    *    Q. Well, state everything that was said at that time,—how the subject came up, and the whole thing from the beginning.    A. I told him that Mr. French said the salvage had to be sold,—we got to talk about that,—and that was all there was said.    'Well,' he said, 'whatever Mr. French does in the matter, it is all right.'    That is all that was said between Mr. Munn and myself."

On being subsequently recalled, the witness further testified:

"Q. Now, Mr. Schmidt, I wish you would state in detail, fully, just what talk you had with Mr. Munn about this sale of salvage wheat. A. Well, Mr. Munn, he was coming down to the hotel, and I met him right on the sidewalk, on Kelly avenue, and he asked me where I was going.    I told him I was going up to the hotel.    'Well,' he says, 'I am going down and look at the salvage wheat that is there.'    I told him, I says, 'Why, they are loading it in the car.'    He says, 'Is that so?'    I says, 'Yes.'    And I says, 'Mr. French told me that it had to be sold.'    'Well,' he says, 'whatever Mr. French did or does

in the matter is all right. It is satisfactory to me,' he says.  *  *  *
Q. Well, anything about that,—whether it had been sold or had not
been sold? A. Yes, sir; there was. He asked me who was load-
ing the wheat. Well, there wasn't anything said about who bought
the wheat. He asked me who was loading the wheat. I told him
Mr. Martin was loading it in the cars. Q. Was there anything said
between you and him as to whether the wheat had been sold, or
was to be sold after? A. I don't remember whether there had or
not. Q. You don't remember? A. I don't remember; no, sir. Q.
But you did tell him who was loading that wheat at the cars? A.
Yes, sir. The Court: You didn't tell him that the wheat had been
sold? Witness: I don't know, your honor, whether I did or not. I
don't remember. The Court: You didn't talk about the sale of the
wheat, except you told him— Witness: I told him that Mr. French
said the wheat had to be sold, and they were loading it in the cars,
and he says, 'Whatever Mr. French does in the matter it is satisfactory
to me.' "

On cross-examination the adjuster French testified:

"Q. Did you conceal from Mr. Munn the fact of the sale of said
salvage? And, if not, what did you say to him about it, and what
did he say to you, or in your presence? A. No; I informed him of
the sale of said wheat. He said he would not take any part in the
adjustment of said loss, because he believed that Mr. Schmidt claimed
that there was four times the quantity of grain in the elevator at
the time of the fire than he [Munn] believed there really was."

Munn was called as a witness, and testified that after arriving on
the train, Tuesday afternoon, he went down to the ruins. Said the
witness:

"I looked over the ruins, and noticed the burnt grain that was
there. It was about all loaded on the car. I think there was a very
small pile, perhaps as high as one of those desks. They had the grain
nearly all loaded into the cars when I was there that afternoon."

Munn denied that he met Schmidt on the street, or ever had any
such conversation at all with him as testified to by Schmidt. But
this conflict of evidence raised only a question for the jury.

We are of the opinion that on this evidence the jury were justi-
fied in finding that Munn knew that a sale had in fact been made by
the other adjusters, and the claim that he did not have such full and
sufficient knowledge thereof that his statements could amount to a
ratification is untenable. It seems to us, also, that the jury were
justified in finding that he knew that the sale had been made by the
other adjusters, not for the benefit of their companies alone, but for
the benefit of all the insurance companies interested in the salvage;

that Munn and these other adjusters understood the relative rights of the different insurance companies in this salvage; and that Munn knew that French and Cobben made the sale with the expectation that Munn's companies would ratify their acts, and come in and take the benefit of those acts.   These adjusters were all experts, and must be presumed to have understoood their business.   Then Munn had but little reason to suppose that French and Cobben claimed any exclusive right to, or benefit from, the salvage so sold by them. These facts being found by the jury, the situation made it peculiarly the duty of Munn to speak, and repudiate the acts of French and Cobben in selling the salvage, if he did not intend to ratify the same. But there is evidence tending to prove that he expressly ratified the same.   We are also of the opinion that, if Munn had authority to join in making the sale originally, he had authority to ratify it after it was made.   That he had such authority to join in making the sale originally is settled by the opinion in the former case above referred to.

There is no evidence in this case that Munn had any other authority than such as would be implied from his general duties as adjuster, and it is contended by appellants that his general duties as adjuster did not, under the terms of this policy, give him any authority to sell or dispose of this salvage.   The policies provide,

"It shall be optional, however, with this company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality."

The policies further provide,

"Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided."

We construe these provisions to give the insurer a right to take the salvage, whether he replaces it with new property or not, and the mode of ascertaining its value may be agreed upon by the parties at the time.   The adjuster is presumed to have authority to attend to these matters.

All the other questions in the case are disposed of in said former opinion.

Orders affirmed.