T. S. SEXTON, et al. v. HARTFORD FIRE INS. CO., et al.

Eastern Section.  February 11, 1928.

Petition for Certiorari denied by Supreme Court, May 26, 1928.

Howard H. Baker and Chas. H. Davis, of Huntsville, for appellant.
Sizer, Chambliss & Sizer, of Chattanooga, for appellee.

SENTER, J. The bill in this cause was filed to recover on a policy of fire insurance issued by the defendant in the sum of $1000 on a two-story shingle roof frame building, situated in the town of Huntsville, Tennessee. Said policy having been issued to complainant T. S. Sexton on May 2, 1923. On October 4, 1925, the building covered by the insurance policy was destroyed by fire, and resulted in a total loss of the building. The bill was filed August 26, 1926, alleging the issuance of the policy of fire insurance by the defendant; that the building covered by the fire insurance policy was totally destroyed by accidental fire on October 4, 1925; that the building was worth $1500, and the insurance thereon was for $1000, and that the defendant had been duly notified of the burning of the building, and that the defendant had failed to pay said policy of insurance,

and sued for the amount of the policy, $1000, and the interest thereon and also the twenty-five per cent statutory penalty. We will add that the bill also alleged that on October 17, 1923, the defendant, through its duly authorized agent, agreed in writing by written endosement attached to the policy of insurance, that "any loss under this policy that may be proved due the assured shall be made payable to the assured and Roscoe Byrd, admr." The defendant insurance company answered the bill, admitting the issuance of the policy of insurance sued on, and that said policy was issued by the defendants. The answer admits that the defendants had been informed and believed to be true that the house covered by said policy of insurance was destroyed by fire about the date stated in the bill, but denied that the complainant caused notice to be given to the defendants and made the proof required by said policy of insurance, or that complainant had in all particulars complied with the contract of insurance. The answer admitted that defendants had never paid the $1000 insurance, and denied that sixty days had elapsed after the notice and proof of loss required by the policy, and denied that defendants are indebted to the complainant on said policy for any amount, for the reasons set forth in the answer. The answer admitted that by a order attached to the policy that it is provided that loss thereunder proved to be due the assured shall be payable to the assured and Roscoe Byrd, admr., but subject to the terms and conditions of the policy. The answer specifically pleaded that the complainant had failed to comply with certain provisions of the policy. However, only one of these conditions contained in the policy, and specially pleaded by defendants, need be noticed, said provision being as follows:

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon; and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereon and the amount of loss thereon; all encumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the description and schedules in all policies; and changes in the title, use, occupation, location, possession or exposures of said property, since the issuing of this policy; by whom and for what purpose any building herein described and the several parts

thereof were occupied at the time of the fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the. Magistrate or Notary Public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he had examined the circumstances and believes the insured has honestly sustained loss to the amount that such Magistrate or Notary Public shall certify.''

At the hearing of the cause the Chancellor disallowed the relief sought, and dismissed the bill at the cost of complainant. From this action of the Chancellor complainant has appealed to this court and has assigned errors.

It is admitted by appellee that the only question involved in this appeal is whether or not the Chancellor was in error in holding and decreeing that the defendant did not waive the provisions of the policy requiring the filing of sworn proofs of loss; and no detailed statement of other provisions of the policy need be referred to. It is also conceded by the defendant in the reply brief filed with the assignments of error that the defendant was given preliminary notice of the occurrence of the fire.

The Chancellor found and so decreed as follows:

''That the complainants failed to furnish defendant proof of loss as stipulated and required by the terms of the policy; that said requirement of the policy was not waived by defendant; and that under the provisions of the policy the furnishing of the proofs of loss was a condition precedent to the right of complainants to recover on the policy sued on, all other issues are found in favor of the complainant. It is therefore ordered, adjudged and decreed, that complainant's bill be and it is hereby dismissed.''

Hence, the only question presented for the determination of this court on this appeal is, as to whether under the facts and circumstances as shown by the record the defendant waived a compliance with the provision of the policy relative to the furnishing by defendant to complainant sworn proofs of loss as stipulated and required by the terms of the policy. It is admitted by the complainant that sworn proofs of loss as provided in the policy were not furnished, but it is the contention of appellant under the assignments of error that ''the court erred in finding that the defendant insurance companies did not waive the furnishing of proofs of loss, and erred in finding that such formal, detailed proofs of loss was a condition precedent to liability.''

The record discloses that on October 17, 1923, the loss payable clause in favor of Roscoe Byrd, admr., of the estate of G. W. Byrd,

deceased, was attached to the policy by the consent of the authorized agents of the defendant insurance company. It appears that the insured, T. S. Sexton, purchased this property from G. W. Byrd and wife for the consideration of $1500 by deed dated April 26, 1923, paying $500 cash at the time of purchase and executed his two notes in the sum of $500 each, one note due and payable eighteen months after date, and the other due and payable twenty-four months after date. Upon the death of G. W. Byrd, his son, Roscoe Byrd, duly qualified as the executor of his estate, and these two notes came into his hands as such executor. Upon the failure of complainant Sexton, to pay the notes after they both became due, a bill was filed in the chancery court to enforce the lien retained in the deed securing the two notes representing the deferred payments, and a decree had been entered in that cause directing a sale of the property by the Clerk and Master to satisfy the lien. Before the sale occurred under the decree the two-story residence on the lot was totally destroyed by fire, and the lot brought $300 at the sale. It will thus be seen that Roscoe Byrd, as executor, and under the loss payable clause attached to the policy, became the real party interested in the collection of the insurance on the burned building. The amount of court costs and interest under the vendor's lien enforcement case is not shown, but it would certainly approximate the $300 realized from the sale of the lot, and hence very little of the proceeds of the insurance policy could enure to complainant Sexton. The property was reasonably worth about $1500 at the time of the fire. We refer to these matters because of the bearing these facts have on the conduct of the parties after the fire occurred, and in connection with the notice given to the defendant of the fire, and the correspondence between Roscoe Byrd and the defendant and its agent concerning the insurance on the property.

It is not claimed by either Byrd or Sexton that proofs of loss as provided in the quoted provision of the policy hereinbefore referred to, were furnished to the defendant, other than the notice of the fire. But it is the contention of complainants, that by the actions and conduct of defendant and its authorized agents, the provision in the policy requiring sworn proofs of loss was waived by the defendant. This is the question that is presented on this appeal.

The validity and binding effect of such a provision as contained in the policy sued on is generally recognized, and the failure of the insured to give the notice and to furnish the proofs of loss is a condition precedent to the bringing of a suit in the event of loss or damage by fire, unless the condition or provision in the policy is either expressly or impliedly waived by the insurance company. (Ligon's Admr. v. Insurance Co., 87 Tenn., 341; Phoenix Ins. Co. v. Munday, 5 Cold., 547.) In the latter case it is said: "The production by the

assured of the preliminary proofs required by the conditions of the policy, was a condition precedent to his right of action."

It appears from the record in this case that the following notice or letter was mailed to A. & J. H. Stoddard, general agents of defendant:

"Huntsville, Tenn.,
"11/10/25.

"Messrs. A. & J. H. Stoddard,
"General Agents,
"New York.
"Gentlemen:
"I beg to advise you that the house covered by policy 5825 in Huntsville, Tennessee, insured in the Hartford Insurance Co., and underwritten by yourselves, was destroyed by fire on the morning of October 5, 1925, which was a total loss. This policy was issued to T. S. Sexton for $1000, and the loss clause assigned to Roscoe Byrd, admr. The policy was issued through the office of C. E. Hendrix & Co., of Harriman, Tennessee. You will please have your agents to adjust this matter at once, I am,
"Yours very truly,
"_____"

The above letter appears to have been written by Roscoe Byrd and sent by registered mail. On the same date the following letter was written to the defendant Hartford Fire Insurance Co:

"Huntsville, Tenn.,
"Nov. 10, 1925.

"Hartford Fire Insurance Co.,
"Hartford, Conn.
"Gentlemen:
"I beg to advise you that I hold a policy No. 5825 for $1000 on a house in the town of Huntsville, Tennessee. This policy was issued by C. E. Hendrix & Co. of Harriman, Tennessee, and underwritten by A. and J. H. Stoddard, general agents, with offices in New York. The policy was made payable to T. S. Sexton, of Huntsville, Tennessee, and the loss assigned to Roscoe Byrd, admr., on October 17, 1923. This house burned on the morning of October 5, 1925, and was a total loss. You will please have your agents to adjust this matter at as early a date as convenient. I am,
"Yours very truly,
"_____"

The above letter was written and sent by registered mail by Roscoe Byrd.

It appears that Scott & Sanders succeeded C. E. Hendrix & Co., at Harriman, as the agent of the defendant insurance company, and

Scott & Sanders wrote Roscoe Byrd the following letter, in reply to a letter which Byrd had written to Scott & Sanders. The letter is as follows:

"Harriman, Tenn.,
"Nov. 12, 1925.

"Mr. Roscoe Byrd,
"Huntsville, Tenn.
"Dear Mr. Byrd:
"We thank you for calling our attention to the loss of T. S. Sexton, which occurred on the morning of October 5. We are sorry this matter has not been adjusted sooner, but the number of fires over the country makes it impossible. The adjusters are so busy they simply cannot get to a loss under thirty or sixty days, however, we are writing the company today asking them to get an adjuster on the ground as soon as possible.
"Assuring you of our co-operation, I am,
"Yours very truly,
"Scott & Sanders.
"F. T. Sanders."

On November 16, 1925, A. and J. H. Stoddard, general agents of defendant in New York, wrote the following letter to Mr. Roscoe Byrd:
"We have your letter of November 10 informing us that property covered by above policy, situate Huntsville, Tennessee, sustained loss or damage by fire October 5, and calling our attention to the policy having been issued subject to loss payable clause in favor of Roscoe Byrd, admr.
"Our records show that we received notice of the loss October 9 from Scott & Sanders, our agent at Harriman, Tennessee, who issued the policy, and that on October 10 we referred the claim for investigation to the Southern Adjustment Bureau, Chattanooga, Tennessee, who are now no doubt giving the matter necessary attention. We are today furnishing the adjustment bureau copy of your letter of November 10 for their further information."

On November 19 Scott & Sanders addressed the following letter to Roscoe Byrd, admr:
"We are in receipt of letter this morning from the Southern Adjustment Bureau with reference to the above loss, wherein they advise that the letter sent them by the company had evidently gone astray, as they have no record of ever having received the loss. We reported this loss promptly to the company and they acknowledged receipt of our loss notice, and advised us they had referred this matter to the Southern Adjustment Bureau. The adjuster writes that he will make a

special effort to see you this coming week. We are certainly sorry this happened, but am quite sure you appreciate our position.''

On November 30, 1925, Roscoe Byrd received the following letter from Scott & Sanders referring to this loss:

''I am in receipt of advice this morning from the Southern Adjustment Bureau that Mr. E. R. Cotter will be there Wednesday morning, December 2, to adjust the above loss.''

The above closes the correspondence on the subject of this loss passing between Byrd and the defendant and its agents, except certain correspondence that passed between E. R. Cotter, the adjuster connected with the Southern Adjustment Bureau, and Mr. B. L. Sadler, who was an officer in the First National Bank at Oneida, Tennessee, and was also the local agent of Hartford Fire Insurance Co. This correspondence is as follows:

''Mr. E. R. Cotter,

''c/o Southern Adjustment Bureau,

''Chattanooga, Tennessee:

''Dear Sir:

''No. 5825 T. S. Sexton—N. Y.

''Underwriters.

''Loss under the above policy, written through Mr. C. E. Hendrick, agent, Harriman, Tennessee, for $1000 on a dwelling at Huntsville, Tennessee, has been referred to you for adjustment. The Harriman agency is now handled by Scott & Sanders.

''We understand your representative was at Huntsville sometime last year to adjust this loss but for some reason proof was not taken. I am wondering just what the trouble is in this case, and if the fact that the property was advertised for sale will have any effect on the adjustment.

''I am interested in this adjustment because we are carrying a note in the First National Bank, Oneida, Tennessee, to which is attached a land note on this property, so that we are expecting the funds derived from this adjustment to liquidate the note.

''Please advise by return mail just what the present status is. I have talked to Mr. Roscoe Byrd in whose favor the loss payable clause is made in the policy, and he does not know just what the condition is.

''Of course, we are hoping the company will settle the loss without any question, but if it is a fact that they are going to

deny liability, we certainly want to know this as soon as possible.

> "Yours very truly,
> "D. L. Sadler, Agent."

The above letter is dated April 8, 1926. Mr. Cotter replied to the above letter on April 22, 1926, as follows:

> "Mr. B. L. Sadler, Agent,
> "Oneida, Tennessee.
> "Dear Sir:
> "Re: Loss—Policy #5825 T—T. S. Sexton. New York Underwriters Agency.
> "Answering your letter of the 8th ins. relative to the above matter, I would suggest that you refer Mr. Roscoe Byrd, who is making inquiry about this loss to the provision of the policy itself, which policy he is holding in his possession.
> "Yours very truly."

Mr. Cotter testified that he was an insurance adjuster connected with the Southern Adjustment Bureau, and in charge of the Chattanooga office during the years 1925 and 1926, and that the matter of the adjustment of the claim of complainants for loss under the insurance policy in question was referred to him, and that he went to the town of Huntsville to ascertain the facts in the matter.

On that trip he did not see Mr. Sexton. It appears that Mr. Sexton was not in the town of Huntsville on that day. It appears that Mr. Cotter was at Huntsville on the 2nd day of December, 1926, for the purpose of investigating this fire in his capacity as adjuster. He was informed on that occasion by Mr. Byrd that Mr. Sexton had no further interest in this property at that time. Mr. Cotter went to the premises and saw that the building was a total loss, only the chimney standing. Mr. Cotter talked with Mr. Byrd about the fire on the occasion of his visit to Huntsville. The details of the conversation are not fully stated or shown in the evidence. Mr. Byrd stated that he met Mr. Cotter in Huntsville and talked with him about the fire. In his examination in chief he was asked and answered as follows:

> "Q. Subsequent to receiving this letter, state whether or not the Mr. E. R. Cotter referred to therein, came to Huntsville on December 2 to adjust a loss under this policy? A. Yes, sir, he was here and went over and looked where the house was burned.
> "Q. Did he request you to furnish him with any further evidence of the loss than that which you furnished him or which he saw? A. He did not."

On cross-examination Mr. Byrd testified further on this subject:

> "Q. You have never made any attempt to furnish any further notice of the fire or proofs with reference to the amount of the loss

other than the copies of the letters which you have filed as exhibits in this deposition, have you? A. No, sir, I have not. When the adjuster was here we went over and looked at the property and took it that was all that was necessary.

"Q. The adjuster, Mr. Cotter, requested to see T. S. Sexton, did he not? A. As I remember he asked about T. S. Sexton and where he lived, and as I remember right I told him I could get Mr. Sexton in, and Mr. Cotter and myself came to the Clerk and Master's office and I don't think I saw Mr. Sexton that day."

This witness testified further on cross-examination:

"Q. You never wrote them any letter except the notices, copies of which you have filed as exhibits to this deposition, did you? A. I don't remember now whether I did. I talked to the adjuster about a settlement but didn't get much satisfaction from him.

"Q. When you talked to the adjuster he didn't refuse to pay this loss, did he? A. He marked out on the policy, or the policy that he had a certain clause in there, something about litigation, he didn't say much about it, he just showed me that policy.

"Q. In your conversation then with the adjuster he didn't have much to say but simply referred to your insurance policy, is that right? A. I think it was a policy he had with him that he looked at, I won't be positive about that."

In 26 C. J., sec. 483, p. 376, it is said:

"Formal proofs of loss are not dispensed with by the fact that the insurer has received information of the loss and has had an opportunity to investigate it, or by the fact that an adjuster has been told of the loss and has been furnished a list of the property alleged to have been destroyed."

In 26 C. J., sec. 511, page 397, it is said:

"The fact that the insurer even with notice of loss, remains inert and fails to demand that insured comply with stipulations as to proof of loss does not constitute a waiver thereof."

In support of this statement of the rule under footnote 79, numerous cases are cited.

However, we think it well settled that a waiver of stipulations or conditions in a policy requiring proof of loss, and prescribing the form and requisites thereof, may be implied by the facts and circumstances, or from words or conduct of the insurance company, its officers or agents. It has been held that "any words or conduct inconsistent with an intention upon the part of the insurer to insist upon compliance with the requirements of the policy in this respect, and calculated to lead insurer to believe that they will not be insisted upon, may constitute an implied waiver." (26 C. J., sec. 510, p. 396.) Numerous cases are cited in the footnotes in support of this

rule, and these cases are so numerous and from so many different jurisdictions it is clearly the generally recognized rule in America.

Applying this general rule to the facts of this case, we find that notice of this fire loss was promptly furnished to the defendant. While it is true the policy was issued to complainant T. S. Sexton, and T. S. Sexton did not personally furnish the notice of the fire to the defendant and its agents, yet, Mr. Byrd, in his capacity as executor of the will of his deceased father, held the deferred payment notes, and the policy contained a loss payable clause, making the insurance payable to Byrd, admr., as his interest may appear. As above pointed out, Byrd was really the party at interest, because under the loss payable clause the proceeds from the policy would have been applied to his notes, covering the entire amount of the policy, the notes being for $500 each, with accrued interest, amounting to more than the amount of insurance on the building. However, he states that he gave the notice to the defendant and its agents at the request of Sexton. All the correspondence and negotiations following the fire were between Byrd and the defendant. The agents of the defendant notified Byrd of the date that the adjuster would be in Huntsville to adjust the loss. No request or demand had been made by the defendant, or its agents that proofs of loss as required by the provisions on the subject in the policy be furnished. There was some little delay in the arrival of the adjuster to reach Huntsville. Mr. Cotter, the adjuster, was clearly the authorized agent of the defendant to adjust this loss. He met Mr. Byrd when he went to Huntsville about this particular matter, and talked with him. He had with him what purported to be a copy of the policy and pointed out to Mr. Byrd the provision in the policy with reference to litigation, but made no mention of the provision in the policy with reference to the provision requiring proof of loss to be furnished. He was there on the ground and saw for himself that the house had been totally destroyed by fire, only the chimney remained standing. He had every opportunity at that time to learn the value of the house, and the proof shows clearly that it was worth about $1500, and therefore only two-thirds covered by insurance. While he was there he visited the office of the Clerk and Master of the chancery court where the proceeding for the enforcement of the vendor's lien was then pending. The only inference to be drawn from his visit to the office of the Clerk and Master in company with Mr. Byrd was to investigate the court proceedings pending at the time the fire occurred involving this property. Mr. Byrd states that he furnished him all the information, not in writing, but in the course of conversation, that Mr. Cotter requested. Mr. Cotter pointed out the provision in the policy with reference to court proceedings, and that fact in connection with his visit to the office of the

Clerk and Master would indicate that the only trouble or difficulty in the way of the adjustment or payment of the policy was the pending litigation. Mr. Byrd states that Mr. Cotter gave him but little satisfaction with reference to the adjustment of the loss. Mr. Cotter left Huntsville, after remaining there a few hours, and nothing further was heard from the defendant with reference to this loss until in April, 1926, Mr. Sadler, cashier of the bank, wrote the letter hereinbefore quoted, and received the reply from Mr. Cotter hereinbefore quoted. The defendant never at any time so far as the record discloses, prior to the filing of its answer in this case, refused payment of the policy, nor did it have any communication on the subject except the letter of Mr. Cotter to Mr. Sadler, in April, 1926. It is true that in the letter from Cotter to Sadler, which was in reply to Sadler's letter, Mr. Cotter stated that he would suggest to Mr. Sadler that he have Byrd refer to the provisions of the policy itself. Mr. Sadler was the local agent of the defendant insurance company, and was also the cashier of the bank at Oneida. The bank was holding these notes, or one of them, as collateral security to a note which Byrd had executed to the bank as administrator of the estate of his father for borrowed money. It does not appear that the estate of Byrd's father was insolvent. It does not appear that Byrd was insolvent. It only appears that Byrd, as the administrator, had obtained a loan from the bank for the benefit of the estate, and had hypothecated the notes of Sexton as collateral security. It is significant that Sadler used the stationery or letter head of the insurance company, the defendant, and signed his name to the letter as agent. It is also significant that Mr. Cotter, the adjuster, recognized Mr. Sadler as the local agent of defendant, because he addressed him "Mr. D. L. Sadler, agent, Oneida, Tennessee." So we think that it sufficiently appears that Mr. Sadler was interested in having the adjustment made both as cashier of the bank and as local insurance agent for the defendant. However, we cannot escape the conclusion that Mr. Cotter, at the time of his visit, and by his conduct on that occasion while at Huntsville, seemed to make some question with reference to the insured property being in litigation at the time of the fire, and did not intimate or in any way indicate that there was anything else in the way of a settlement of the policy. We think that under all the facts and circumstances and the conduct and actions of the adjuster for the defendant, that the only question or difficulty which Mr. Byrd anticipated being made by the defendant was with reference to the court proceedings then pending for the enforcement of the vendor's lien on the destroyed property, and that by the conduct and actions of the adjuster for defendant, taking into consideration the correspondence, and especially the attitude of defendant's agents at Harriman, that he was

led to believe that proof of loss would not be required, or in other words, he was lulled into a sense of security. We find nothing in the case of Ligons v. Ins. Co., supra, that would be in conflict with this holding. It is true in that case the defendant had proposed a settlement of the loss, which failed only by reason of a disagreement as to the amount, and that it was on this ground that the court held that the failure of the insured to file the proofs of loss provided for in the policy had been waived. However, in that case the court said:

"Such stipulations are eminently proper and should be sustained, and are by the courts upheld; but, being a provision for the benefit of the insurance company, can be waived by the latter, and will be held by the courts as waived where the conduct of the company has mislead, and was such as might well have mislead a reasonably prudent man, or where it is manifest that the company had already been put in possession of all the information that said clause was intended to furnish, and made no request for more specific details until after the lapse of an unreasonable time, leaving the insured to suppose that no further demands would be made."

In this case the loss was total. The insurance covered but one item, the frame two-story building; the loss payable clause was attached to the policy by the consent and approval of the defendant. The state of the title to the property was evidently within the knowledge of the adjuster. So much of the provision of the policy as required verified plans and specifications, was not an absolute provision in the policy, but should only be furnished to the company if the company required it. There would remain very little for the proofs of loss to disclose, other than the facts that were already within the knowledge of the adjuster.

We are of the opinion that the learned Chancellor was in error in decreeing a dismissal of complainant's bill. We are of the opinion that the provision in the policy made the basis of this litigation was waived for the reasons hereinbefore set out. We are further of the opinion that the complainant is entitled to recover against the defendant the amount of the policy, with interest thereon from the date of the filing of the bill. There is nothing in the record that would warrant a recovery of the twenty-five per cent statutory penalty sued for in the original bill. It results that the decree of the Chancellor is reversed, and a judgment in favor of complainant and against the defendant for the sum of $1000, with interest thereon from the date of the filing of the original bill to this date and for the costs of the cause including the cost of this appeal, will be entered here.

Owen and Heiskell, JJ., concur.