GEORGIA HOME INS. CO. v. JONES et al.—135 S. W. (2d) 947.

Middle Section.   September 23, 1939.

Petition for Certiorari denied by Supreme Court, February 3, 1940.

584

Reber Boult and Trabue, Hume & Armistead, all of Nashville, for plaintiff in error Insurance Co.

Frank Bentley, of McMinnville, and Sterling Brown, of Woodbury, for defendants in error.

FAW, P. J. Robert Jones and J. B. Jones sued the Georgia Home Insurance Company, in the Circuit Court of Warren County, to recover on a fire insurance policy for the partial loss by fire of a Plymouth automobile fully described in the plaintiffs' declaration and elsewhere in the record.

The case went to trial before the court and a jury upon the issues made by defendant's pleas of nil debet and non assumpsit to plaintiffs' declaration, and, at the close of plaintiffs' evidence in chief, the defendant Insurance Company moved for a directed verdict in its favor, which motion was overruled by the court. The defendant declined to offer any evidence, and thereupon the court directed the jury to return a verdict in favor of the plaintiffs for $125, which was done.

A motion for a new trial on behalf of the defendant Insurance Company was seasonably made and overruled, and the court rendered judgment for the plaintiffs and against the defendant for $125 and the costs of the cause. The defendant excepted to the "action and rulings and judgment of the court," and prayed an "appeal" to this court, which was granted by the trial court, and the defendant was granted time in which to perfect its appeal and file its bill of exceptions.

Within the time granted, the Insurance Company filed an appeal bond, and thus perfected its appeal, and jurisdiction of the case was thereby transferred to this court.

Thereafter the case was reached and heard on the regular call of the docket, but, on a former day, a judgment was entered by this court, pursuant to an opinion then filed, affirming the aforesaid judgment of the Circuit Court for the reason that it did not appear from the transcript of the record filed here that the bill of exceptions copied into the transcript had been filed with the clerk of the trial court within the time allowed by law, as said bill of exceptions did not bear any file-mark or notation by the clerk showing the date on which it was delivered to him, and the only questions presented by the assignments of error filed in this court depended for determination upon a consideration of the evidence heard below.

Thereafter, in due season, the plaintiff in error Insurance Company filed a petition for a rehearing and for leave to suggest a diminution of the record, averring that the aforesaid bill of exceptions was filed in the trial court within the time allowed by law and by order of the trial judge, and that, by inadvertence and oversight, the clerk of the Circuit Court failed to show said date on the transcript certified by him to this court.

The petition is accompanied by a certificate of the clerk of the trial court from which it appears that the bill of exceptions was seasonably filed, and the date of such filing noted thereon by the clerk at the time it was filed in his office, but such notation was omitted from the transcript by oversight and inadvertence.

The petition for a rehearing, etc., is granted, and our former judgment of affirmance, is vacated and set aside. The supplemental transcript exhibited with the petition to rehear will be filed as a part of the transcript in this court, and the judgment and rulings of the Circuit Court, in so far as they are challenged by assignments of error, will be reviewed on the record.

However, before proceeding with a further statement of the case, we call attention to the fact that, since our former opinion was filed and judgment entered, a notation has been inserted at the foot of the bill of exceptions in the transcript originally filed here, which notation is in words and figures as follows: "filed Nov. 25—1938. Frank Hennessee, Clerk."

The notation thus inserted was written with pen and ink and a comparison of same with the signature of the clerk to his certificate to the transcript indicates that he made said interpolation.

We take this occasion to admonish the clerks that it is not proper for them to make corrections, either by insertion or erasure, in transcripts after they are filed in the appellate court. The appropriate method for correcting errors in such transcripts is by *supplemental transcript*.

The observation just made is not intended as a reflection upon the motives of the clerk in the present instance, for the circumstances of this particular case make it clear, we think, that said insertion was innocently made, without any ulterior motive whatever, but such a practice if countenanced might, in other cases, lead to harmful results.

As before stated, the Insurance Company prayed, and the trial court granted an "appeal" in this case. Such "appeal" must be construed to mean an appeal in the nature of a writ of error, as a simple appeal does not lie from a judgment in an action at law. Spalding v. Kincaid, 1 Shannon Cas. 31; Manley v. Chattanooga, 1 Tenn. App., 65.

For convenience, we will refer to the parties as plaintiffs and defendant, respectively, as they appeared on the record below. In their declaration, the plaintiffs sued the defendant for the sum of

$125, "together with interest, costs and penalty," and averred that the plaintiff Robert Jones is the owner of a Plymouth automobile coach bearing serial number PB24114 and being a 1932 Model of the value of $300; that on the 25th day of December, the plaintiff Robert Jones entered into a contract with the defendant Insurance Company, whereby the defendant Company agreed to, and did, insure and indemnify the plaintiff Robert Jones, and his co-complainant J. B. Jones, who had a lien upon said car, against loss occasioned by fire of the aforesaid automobile, which policy of insurance is numbered A020307, and profert thereof is made to the court; that on the ───────── day of January, 1938, the aforesaid automobile caught on fire and burned, not entirely up, but to such an extent as to damage its value more than $125; the complainants being at no fault in the matter of its burning; "that notice of this loss was duly given to the defendant Company in accordance and compliance with the terms of said policy" and that the defendant has failed and refused to pay plaintiffs, or either of them, any sum as damages as the result of the burning of said car.

As before stated, the defendant pleaded, (1) nil debet, and (2) non assumpsit. In this court the defendant has assigned as error, (1) that "the court erred in overruling defendant's motion for a directed verdict in its favor at the conclusion of all the evidence;" and (2) that "the court erred in directing a verdict in favor of the plaintiff."

The facts disclosed by the record, so far as necessary to state them for present purposes, are as follows:

On December 25, 1937, the defendant Insurance Company issued a policy-contract by the terms of which it insured, for the period of one year, Robert Jones against the loss, by fire or theft, of a described Plymouth automobile, limiting its liability to $125, and providing that "subject to all the provisions, exclusions, conditions and warranties contained in this policy, loss, if any, payable, as interest may. appear, to Assured and J. B. Jones."

The aforesaid policy contained, among other "general conditions," the following:

"Protection of Salvage. In the event of any loss or damage, whether insured against hereunder or not, the Assured shall protect the property from other or further loss or damage, and any such other or further loss or damage due directly or indirectly to the Assured's failure to protect shall not be recoverable under this policy. Any such act of the Assured or this Company or its agents in recovering, saving and preserving the property described herein, shall be considered as done for the benefit of all concerned and without prejudice to the rights of either party, and where the loss or damage suffered constitutes a claim under this policy, then all reasonable expenses thus incurred shall also constitute a claim under this policy, pro-

vided, however, that this Company shall not be responsible for the payment of a reward offered for the recovery of the insured property unless authorized by this Company."

"Notice of Loss. In the event of loss or damage covered hereby the Assured shall give immediate notice thereof in writing to this Company, provided, however, that where such a limitation for the giving of notice of loss is prohibited by the laws of the State wherein this policy is issued, then in that event such notice shall be given by the Assured within the shortest period permitted and in the manner required under the laws of such State."

"Proof of Loss. Within sixty (60) days after loss or damage for which claim is made, unless such time is extended in writing by this Company, the Assured shall render a statement to this Company signed and sworn to by the Assured, stating the place, time and cause of such loss or damage, the interest of the Assured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, all encumbrances thereon, and all other insurance, whether valid and/or collectible or not, covering such property; and all claims for such loss or damage shall be forfeited by failure to furnish such sworn statements within the time provided; and the Assured as often as required, shall exhibit to any person designated by this Company all that remains of the property insured and submit to examinations under oath by any person named by this Company, and subscribe the same; and as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made."

"Suit against Company. No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the foregoing requirements."

It appears from the testimony of the plaintiff Robert Jones that he is the owner of the insured automobile described in the declaration, and was the owner thereof at the time the insurance policy in suit was issued, and at the time the car was partially burned; that J. B. Jones, his grandfather and co-plaintiff, had a lien on said car to secure a loan of $250 at the time the car was insured, but which debt had been reduced to $46 at the time of the trial below; and that there were no other liens or encumbrances on the car.

Plaintiff Robert Jones testified further that, on a day in January, 1938, while he was driving said car on the "Old Shelbyville Pike," accompanied by his grandfather, the plaintiff J. B. Jones, and enroute from his home in the country to the town of McMinnville, the car caught fire and burned. He was unable to explain the cause or origin of the fire, further than that it "caught under the dash," and,

notwithstanding vigorous efforts on his part to extinguish the flames (which efforts he describes in detail), he *"couldn't put it out."*

There is also undisputed evidence that the damage done to the insured car, as a result of said fire, was equal to or greater than the sum of $125.

Thomas Burroughs was the local agent of defendant Insurance Company at McMinnville at the time of the transactions involved in this case. Shortly after the automobile was burned as aforesaid, and on the same morning, plaintiff Robert Jones went to McMinnville and, finding Mr. Burroughs absent, he reported the fire to Mrs. Burroughs, who called up "one of the garages" in McMinnville and "had them go out there and get the car and put it in storage."

Mr. Burroughs testified that he notified the Company of the loss the same day it was reported to his office.

The next day after the said automobile burned, "the Fire Marshal" went to McMinnville and, after some investigation, procured an indictment, at the January, 1938, term of the Circuit Court of Warren County, against plaintiff Robert Jones on the charge of "burning the car," which case was continued to the May term of said Circuit Court, and at the latter term the State dismissed the prosecution on the recommendation of the Attorney-General.

In this connection, it should be stated that there is no evidence in the record that defendant Insurance Company was instrumental in procuring the aforesaid investigation by the Fire Marshal, or the indictment against the plaintiff Robert Jones, or that defendant, or any of its agents, participated, in any way or manner, in the effort to prosecute plaintiff Robert Jones criminally on the charge of "burning the car."

The present suit on the policy was instituted on July 18, 1938— approximately six months after the automobile was burned. Neither of the plaintiffs, nor any one for them, furnished, or attempted to furnish, to the defendant, within sixty days after the loss or damage for which plaintiffs are suing, or at any other time, the "proof of loss" required by the clause of the policy on that subject hereinbefore quoted.

■ The aforementioned written "notice" by defendant's local agent, Burroughs, to the Home Office of defendant, on the day the car burned, was, we think, a sufficient compliance with the aforesaid policy requirement of immediate "notice of loss." Couch on Insurance, vol. 2, page 1729, sec. 548a; Id., vol. 7, sec. 1526, page 5428.

■ But such "notice of loss" did not dispense with the necessity for the formal "proof of loss." Couch on Insurance, vol. 7, sec. 1528; Central City Insurance Co. v. Oates, 86 Ala. 558, 6 So. 83, 11 Am. St. Rep., 67; Sexton v. Hartford Fire Insurance Co., 7 Tenn. App., 273.

■ The clause requiring "notice of loss" contemplated nothing

more than information to the insurer of loss of, or damage to, certain property then insured by it; whereas the "proof of loss" clause specifically required a statement, signed and sworn to by the Assured, "stating the place, time and cause of such loss or damage, the interest of the Assured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, all encumbrances thereon, and all other insurance, whether valid and/or collectible or not, covering such property."

"Proofs of loss, where they are furnished within the time prescribed for the notice of loss, may dispense with the formal notice itself, but notice of loss will not of itself dispense with the necessity of making formal proofs of loss. In fact, it has been declared that giving notice and furnishing proof are separate and distinct acts, that although the proof may, under certain circumstances, serve the purpose of notice, a mere notice does not ordinarily supply the place of formal proof, and that, however the two acts may be done, the performance of each is a condition precedent to the insured's right to recover, in the absence of waiver." Couch on Insurance, Vol. 7, sec. 1528, page 5431.

In the instant case, the plaintiffs not only failed to furnish proofs of loss within the time limited by the policy (sixty days after loss or damage), but they did not furnish, or attempt to furnish, such "proofs" to defendant at any time. The policy specifically provided that "all claims for such loss or damage shall be forfeited by failure to furnish such sworn statements within the time provided," and, in a subsequent clause, it was provided that "no suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the foregoing requirements."

Stipulations in a fire insurance policy requiring written proofs of loss are "eminently proper, and should be sustained" (Ligon's Administrators v. Equitable Fire Insurance Co., 87 Tenn., 341, 344, 10 S. W., 768, 769), and, in this respect, an automobile fire insurance policy does not differ from other fire insurance policies. Couch on Insurance, Vol. 7, sec. 1508; Metcalf v. National Union Fire Insurance Co., 29 Ga. App., 590, 116 S. E. 324.

Aside from the citation of five Tennessee cases involving the construction and application of the Workmen's Compensation Law (Public Acts of 1919, chapter 123, section 22), the only Tennessee cases cited for plaintiff are Insurance Co. v. Whitaker & Dillard, 112 Tenn., 151, 79 S. W., 119, 122, 64 L. R. A., 451, 105 Am. St. Rep., 916, and Ligon's Administrators v. Insurance Co., supra. In Insurance Co. v. Whitaker, supra, the court *adopted*, "as a sound statement of the law," the rule laid down in Joyce on Insurance as follows:

"If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the

time prescribed, and does impose forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action though he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing the action upon the policy. And this has been held to be true even though the policy provide that no action can be maintained until after a full compliance with all the requirements thereof.''

But the rule thus stated cannot avail the plaintiffs in the instant case, for, as we have seen, the policy on which the plaintiffs are suing, *imposes, in expressed terms, a forfeiture for a failure to furnish the specified proof of loss within the time prescribed;* and the proof of loss was not only not furnished within the designated time, but was not furnished prior to commencing the action on the policy, or at any time.

The facts just stated distinguish this case from the case of Insurance Co. v. Whitaker, and render the holding in the Whitaker case (that the insured were not barred by their failure to furnish the proofs of loss until nine days after the expiration of the designated time) inapplicable as a precedent in the instant case. Blackman v. Casualty Co., 117 Tenn., 578, 589, 103 S. W., 784; Phoenix Cotton Oil Co. v. Royal Indemnity Co., 140 Tenn., 438, 443, 205 S. W., 128.; Couch on Insurance, Vol. 7, sec. 1508.

In an action on a fire insurance policy the burden of proof is upon the *insured* to show that he has furnished proofs of loss as required by the policy. Couch on Insurance, Vol. 8, sec. 2246, page 7320; Gallin v. Allemannia Fire Insurance Co., 184 App. Div. 876, 880, 172 N. Y. S., 662, 665, affirmed by the Court of Appeals, 230 N. Y. 547, 130 N. E. 888.

In the New York case last cited, the Court said: ''It rested with the plaintiff to show, as a condition precedent to his right of recovery, the service of the proofs of loss containing the matters required to be contained therein by the provisions of the policy.''

It is quite clear that the present plaintiffs were not entitled to a directed verdict in their favor unless there was evidence upon which it could be held, as a matter of law, that the ''proof of loss'' was waived by the defendant.

It is well settled by the authorities, practically without dissent, that policy stipulations requiring, as a condition precedent to a suit on the policy, that proofs of loss be furnished by the assured to the insurer within a prescribed time, and imposing a forfeiture of a right of recovery on the policy for a failure, may be waived by the insurer. In Ligon's Administrators v. Insurance Co., supra, 87 Tenn. at page 344, 10 S. W., at page 769, the Court said:

''Such stipulations are eminently proper, and should be sustained, and are by the courts upheld; but, being a provision for the benefit of the insurance company, can be waived by the latter,

and will be held by the courts as waived where the conduct of the company has misled, and was such as might well have misled, a reasonably prudent man; or where it is manifest that the company had already been put in possession of all the information that said clause was intended to furnish, and made no request for more specific details, until after the lapse of an unreasonable time, leaving the insured to suppose that no further demands would be made.''

There is no evidence that defendant Insurance Company said or did anything, after the notice of loss was forwarded to it by Mr. Burroughs, upon which a waiver could be predicated. The undisputed testimony of Mr. Burroughs is that no action was taken and ''nothing done about it'' by the defendant company until about the first of June, 1938, when plaintiffs' attorney came to his (Burroughs') office and asked if the Company was ''going to pay this loss,'' and that he (Burroughs) then wrote the Company, and the Company notified him that ''they felt there was no liability,'' which information he communicated to plaintiffs' attorney.

In Central City Insurance Co. v. Oates, 86 Ala. 558, 6 So. 83, 85, 11 Am. St. Rep. 67, 70, the Supreme Court of Alabama said:

''We can find no case, however, where the mere silence of the insurer has been construed as a waiver of the presentation of preliminary proofs by the insured, where no such proofs, defective or otherwise, have been presented. The policy itself is the most solemn notification possible of the imperative prerequisite of furnishing such proofs. It is there stipulated that they must be furnished as soon as possible after the fire, and this stipulation is a standing notice of the requirement. It stands to reason that this notice need not be reiterated by the insurer, nor any special attention of the assured called to it, unless the particular circumstances of the case render it necessary to fair and honest dealing between the parties. And the authorities accordingly hold that the mere silence of the underwriter or insurer, or his failure to specify the non-production of such preliminary proofs, as an objection to the payment of the loss, is not sufficient evidence to justify a jury in inferring a waiver of their production.''

But it is insisted for the plaintiffs that the act of Mrs. Burroughs, in having the burned car ''towed in'' off the highway and placed in a public garage in McMinnville, operated as a waiver by defendant of the policy requirement of proofs of loss by plaintiffs. The theory of plaintiffs seems to be that this permanently deprived them of the possession of the car, and thereby deprived them of the means of obtaining the necessary information for the preparation of the proofs of loss.

If the contention that plaintiffs were thus deprived of the possession of the car was well founded, it is obvious that their opportunity to furnish full information on *only one* of the *several material facts* required to be stated in the proofs of loss was thereby affected, viz.:

the amount of the damage to the car caused by the fire. But we do not think that the evidence supports the contention that plaintiffs were deprived of the opportunity to ascertain the amount of the fire damage to the car.

The entire evidence upon which plaintiffs rely for support of their contention with respect to the possession of the car after the fire, is found in excerpts from the testimony of plaintiff Robert Jones, which we here quote as follows:

"Q. Well, what became of the car then? A. I come in here then and reported it in town, I come on in the morning.

"Q. You reported it to whom? A. To Mr. Burroughs.

"Q. To which Mr. Burroughs? A. Mrs. Thomas Burroughs, he wasn't there.

"Q. What does Mr. Burroughs do, what is his business? A. He is an insurance agent.

"Q. Is he the agent of this company or not? A. Yes, sir, the Georgia Home Insurance Company. I reported to them and she called up one of the garages, up here and had them go out there and get the car and put it in storage, and it has been there ever since. They haven't given me any notice to come and get it, or anything, and they refused to pay me. . . ."

Cross-Examination:

"Q. Mr. Jones, do you have in your possession any repair estimate from any garage in McMinnville that you can show? A. Not with me, I haven't.

"Q. Have you ever received any such written estimate from any garage or mechanic in McMinnville? A. Oh, just little things. I have just a few little things. There wasn't any repair bill on it.

"Q. I didn't ask you if you had it repaired beforehand. I am talking about the damage that was done in this fire. I want to know if you have any estimates on the repairs which were necessary as a result of this fire? A. No, sir.

"Q. Have you ever gotten any such written estimate? A. No, sir.

"Q. You never have even requested any automobile mechanic in McMinnville to give you a written estimate on what it would cost to repair this car after the fire, have you a written estimate. A. No, sir I haven't.

"Q. All you know about what damage was done to that car is the damage that you described, and the facts that you have asked several people if it would be worth repairing. Is that correct? A. Yes, sir.

"Q. And that is all you know about the amount of the damage? A. I haven't got a written estimate.

"Q. Well it has been since January 17th. this is now September 24th—about nine months—you have had plenty of time to get it? A. If I had the car in my possession. You all had it.

"Q. The mechanic didn't object to giving you a written estimate on the repair? A. No sir.

"Q. You didn't ask for it did you? A. No."

In view of the "condition" in the policy for the "Protection of Salvage," hereinbefore quoted, it is a reasonable inference from the proof that the act of Mrs. Burroughs, in having the damaged car towed in and placed in a garage, was intended for its preservation from further loss or damage, and, under the terms of the policy, should be "considered as done for the benefit of all concerned and without prejudice to the rights of either party." For aught that we can see from the record, it was a wise and prudent act on her part.

There is no evidence that plaintiffs, or either of them, were ever at any time denied possession of the car after it was "towed in" as aforesaid, or that they ever requested, or in any manner sought to obtain, possession of it.

The car was in a public garage, and the reasonable inference from the testimony of plaintiff Robert Jones is that he, or any mechanic or expert whom he might employ for purposes of inspection and ascertainment of damages, could have access to it at any time; but, although he had "asked several people if it would be worth repairing," he had not sought to procure from an automobile mechanic an estimate of the damage.

In the case of Yorkshire Insurance Company, Limited et al. v. Craine, 15 British Ruling Cases 353, the Privy Council of the House of Lords, on an appeal from the High Court of Australia, held that certain acts of insurance companies sued in that case, which the companies undertook to exercise under a "Salvage Clause" in the policy, operated as a waiver of a provision of the policy requiring proofs of loss to be furnished by the insured to the insurer within fifteen days after the loss or damage. This is the only case involving this precise question that our investigation of available authorities has discovered.

In the British case cited, supra, certain insurance companies, through their authorized adjuster, took possession (immediately after the fire) of the building containing the salvage of the insured property (which building was owned and occupied by the insured at the time of the fire), locked it up and remained in the exclusive possession thereof for a period of four months from and after the fire, denying to the insured possession or access, notwithstanding his repeated protests and demands for possession, oral and in writing, and his representations to the insurance companies that his "plant" and machinery therein were not insured and were exposed in wet weather, and that he and his men were not allowed on the premises to attend to it. The insured furnished proofs of loss before the suit was brought, but not within the time limited by the policy for that purpose. In the opinion it is said: "The timely delivery of the claims was treated as the

question on which the case turned;'' and it was held that the insurance companies were estopped by their conduct to rely upon the failure of the insured to make ''timely delivery'' of the ''claims'' (proofs of loss).

We think it too obvious to need further comment that the case of Yorkshire etc. Co. v. Craine, supra, affords no precedent or persuasive authority in the case now before us.

Although not involving any question relating to a waiver of proofs of loss, or the timely furnishing thereof, two opinions of the Supreme Court of Minnesota deal with the question of whether the insurers waived conditions of the policies against incumbering the insured property, by taking possession of the ''salvage'' and selling it without accounting to the insured for the proceeds. These cases are, First National Bank of Devils Lake v. Manchester Fire Assurance Co., 64 Minn., 96, 66 N. W., 136, and First National Bank of Devils Lake v. Lancashire Insurance Co. et al., 65 Minn., 462, 68 N. W., 1.

The two Minnesota cases just cited grew out of the same fire, and in the latter case the court followed its decision in the former case; hence the decision of the first of the two cases will suffice for present purposes.

The case was an action to recover upon an insurance policy issued by the defendant Insurance Company to the Mill Company, covering grain, flour, bran and seeds. The Company's defense was that, prior to the fire, certain chattel mortgages were placed upon the property, within the prohibition of the policy. It was admitted by the plaintiff Mill Company that at the time of the fire the policy had become subject to forfeiture, because of the execution of the chattel mortgages; but the Mill Company claimed that the defendant waived the forfeiture after the fire by the action of its adjuster. There was a verdict in the trial court for the plaintiff, and the defendant appealed from an order denying its motion for a new trial. The decision of the court upon the question, raised by an assignment of error, that what the adjuster did or omitted to do in the premises did not constitute a waiver of the forfeiture, appears from the first head-note to the opinion, as follows:

''After a loss on a fire insurance policy, which was subject to forfeiture for a breach of a condition therein against incumbering the property, the defendant, by its adjuster, without knowledge of such breach, took possession of and sold the salvage by virtue of a claim under the policy; but after learning, on the next day after the sale, of the breach, it took no steps at any time to rescind the sale, or to provide for the payment of the purchase price to the assured or to do any act to restore to him what it took from him under the policy. Held, that it thereby waived its right to treat the policy as forfeited.''

The distinction between the two Minnesota cases above cited and the instant case is, we think, too marked to need comment.

We find no basis in the present record for a holding that the defendant Insurance Company waived the stipulated forfeiture of the plaintiffs' claims for loss and damage.

In this connection, we may add that the pendency of the indictment against the plaintiff Robert Jones constituted no obstacle to the furnishing of proofs of loss by plaintiffs, and affords no excuse for their failure in that respect. Hill v. Home Insurance Co., 22 Tenn. App., 635, 125 S. W. (2d), 189, 193.

We are of the opinion that it was error to direct a verdict for plaintiffs, and also error to overrule the defendant's motion for a directed verdict in its favor. The defendant's assignments of error are, therefore, sustained, the judgment of the Circuit Court is reversed, the directed verdict is set aside, the defendant's motion for peremptory instructions in its favor is sustained, and the plaintiffs' suit is dismissed.

The costs of the cause, including the costs of the appeal, are adjudged against the plaintiffs Robert Jones and J. B. Jones.

Crownover and Felts, JJ., concur.