## HOLLAND v. FULLER.
### No. 142.

District Court, E. D. Tennessee, N. E. D.
March 27, 1936.

Walter R. Gray, of Greeneville, Tenn., for complainant.

Susong & Parvin, of Greeneville, Tenn., for defendant W. E. Fuller.

Lee, Cox, Meek & Hier, of Knoxville, Tenn., for cross-defendant American Surety Co.

TAYLOR, District Judge.

This case is now before me on cross-defendant American Surety Company's motion to dismiss defendant's cross-bill, the only ground of which to be given consideration in this memorandum is that a provision of the fidelity bond sued upon provides: "At the earliest practicable moment, and at all events not later than ten days after the insured shall discover any loss, the insured shall give the underwriter notice thereof by registered letter or telegram, addressed to it at its home office, and shall also, within three months after such discovery, furnish the underwriter at its home office affirmative proof of loss with full particulars. Legal proceedings for recovery of loss hereunder shall not be brought prior to the expiration of three months from the furnishing of such proof, nor after the expiration of twelve months from the discovery of such loss. If any limitation embodied in this paragraph is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law," and the contention that, by reason of this limiting provision in the contract, the action commenced on June 9, 1934, more than 12 months after the insured discovered the loss, cannot be maintained. A bill of particulars was filed by the cross-complainant on an order of court requiring it, in which it appears that he arrived in Greeneville on June 4, 1933, and qualified as receiver of the Citizens National Bank and entered upon his duties as such on June 5th or 6th; that on June 5th he conferred with the national bank examiners, who were then in charge of the affairs of the bank, and learned from them that there were numerous irregularities in the bank's affairs due to the misconduct of J. H. Rader as its president; that the examiners had received information to this effect on or about the 1st of June, 1933, from the directors, who believed that claims against the American Surety Company would almost certainly arise. The bill of particulars further shows that he then had no definite knowledge of the details of such transactions, but that on June 7, 1933 (which he avers was the earliest practicable moment after his qualification that he could investigate said bond and ascertain its requirements as to notice, and which was less than ten days from about June 1st), he addressed and mailed a letter by registered mail to the surety, in which it was advised that certain losses had been discovered and were claimed under the provisions of the bond, and "said losses have occurred within the period covered by the bond, and the extent of same is not yet fully ascertained. Said losses have just come to the attention of the directors and to the undersigned as receiver of said Bank, under the provisions of the National Banking Act. Within the time provided by said bond, affirmative proof of loss with full particulars thereof will be furnished you, as provided by the bond.". In the letter the surety was

further advised that it was the belief of cross-complainant that the losses would exceed the penalty of the bond and were due to the dishonest act or acts of the former president, James H. Rader. The bill of particulars further points out that the surety acknowledged receipt of this letter by executing the registry return receipt, and that cross-complainant, on June 24, 1933, mailed the surety at its home office proper proofs of loss covering some thirty-three accounts involving losses which the cross-complainant believed would result in claims against the bank, and upon which the bank would in turn make claim against the surety. One of the claims so listed was the Holland claim involved in this action. The bill of particulars further recites that cross-complainant did not know of this particular transaction until about June 24, 1933, when he, as receiver of the bank, received memoranda from the bank examiners, from which memoranda proofs of loss were prepared and forwarded to the surety.

The motion to dismiss is grounded upon the contention that there is no equity in the cross-bill as to the defendant, and that, by reason of the provisions of the bond, hereinbefore quoted, the cross-bill filed on June 9th was filed more than one year from the date upon which the loss was discovered.

There is great diversity of opinion in reported cases, partly due to differences in the language employed in the contracts which have been before the courts, and there is difference of opinion among attorneys in briefing and discussing the question presented on this motion as to a proper application of the principles announced in certain cases to the facts of this case. There is also apparently serious difference of opinion among counsel as to the ratio decidendi of certain cases relied upon.

Perhaps the first question important to a decision is whether there remains under the cross-complaint and the bill of particulars a question of fact as to the date of the discovery of loss. The surety contends the date of discovery was not later than June 7, 1933, and construes the bill of particulars as so admitting. The bill of particulars recites that the directors of the bank had certain indefinite information with reference to losses as early as about June 1st, but on the final page of the bill of particulars the cross-complainant avers that, as to the transaction involved

here, he had no specific information until about June 24, 1933. For the purposes of passing upon this motion I treat the bill of particulars as though an amendment to the cross-complaint and as a part of it. It may be, though I have been unable to find any case directly in point, that the provision of section 16 of the bond leaves room for the maintenance of suit within 12 months as to any specific item of loss earlier undiscovered where it was known generally some loss had occurred. Briefs on neither side illuminate the particular quantum of knowledge requisite to constitute discovery insisted by the surety as the beginning date of the 12-month limitation period. It will be noted from the bill of particulars, however, that cross-complainant did not consider it necessary under the provisions of section 16 to give special notice of loss as each specific item became definite or any other notice of any loss immediately after discovery than the one such notice given June 7, 1933. The only other and more specific notice was that contained in the proof of loss of June 24, 1933. So it is that, if the June 7th notice was not a compliance with the requirement to give the earliest practicable notice after discovery, there was no compliance with that requirement as to any specific claim not definitely discovered on June 7th. The parties so construe, and the court will adopt their construction. It was apparently understood by the parties that discovery generally of facts from which loss would probably arise required the first notice, and nothing more was required until the specific proof of loss, which had to follow within 90 days. In cross-complainant's brief filed November 14, 1935, to the motion of the surety to dismiss the cross-bill, at page 8 thereof and in argument that the notice of June 7, 1933, was compliance with this requirement of the policy with reference to the earliest practicable notice after discovery, this statement is contained: "It does not, therefore, appear from the averments of the bill that cross complainant as receiver had full notice of the Holland transaction, as averred, on June 7, 1933. Notice of loss is notice of irregularities, which may result in loss. It is not contemplated that it shall take the place of proof of loss; or do more than advise the Surety Company of the general situation, which may result in claims against it, and give it opportunity for personal investigation." Thus it will be seen from cross-complain-

ant's own interpretation of the notice of June 7th that it was based upon sufficient discovery and brought sufficient notice to the surety that a situation existed which would probably result in the loss, claim for which is asserted in the cross-bill, and that proof of all losses for which claim would be asserted would follow. I reach the conclusion that June 7, 1933, marks the last day that cross-complainant may contend, under the pleadings, that the loss here involved was discovered.

This leads to a consideration of whether the 12-month period begins with June 7, 1933, or, as contended by cross-complainant, begins 3 months from the date proof, as required in section 16 of the bond, was furnished, that is, 90 days from June 24, 1933.

■ I am of opinion the decision of this question is one of general law, a decision of which is not controlled by the decisions of the Supreme Court of the state of Tennessee, however persuasive such decisions may be. "The question presented is one of general commercial law. Brooklyn City & N. R. Co. v. National Bank, 102 U.S. 14, 26 L.Ed. 61 (beginning bottom page 29 [of 102 U.S.]. This case discusses the principles determining the question, though in a case where the subject matter is different. Parenthesis by this court); Security National Bank v. Old National Bank (C.C.A.8) 241 F. 1, 8; In re Jarmulowsky et al. (C. C.A.2) 249 F. 319, 321, L.R.A.1918E, 634; Dickson v. First National Bank (C.C.A.8) 26 F.(2d) 411, and it is our duty to exercise an independent judgment based upon the controlling decisions of the federal courts." Ogdin v. Goodwin (C.C.A.) 76 F.(2d) 196, 197. See, also, Burgess v. Seligman, 107 U.S. 20, 33, 2 S.Ct. 10, 27 L.Ed. 359.

In the case of Riddlesbarger v. Hartford Ins. Co., 74 U.S.(7 Wall.) 386, 389, 19 L.Ed. 257, the court had for decision whether the limitation against the maintenance of any action to recover a claim upon the policy, unless commenced within 12 months after the loss, is valid, and whether, if valid, the condition was complied with in the case before the court in the light of the statute of limitations of Missouri. It was contended, among other things, in behalf of Riddlesbarger, the plaintiff in error, that "the contract was made in the State of Missouri, and was made with reference to the then existing laws of that State. That law became

a part of the contract itself, and to that law we must look in giving a construction to the contract; and so far as the remedy is concerned, when suit is brought in that State to enforce a right growing out of that contract, the law of that State must alone govern and determine." The statute of limitations of the state of Missouri provided that actions such as there involved might be brought within 5 years after the cause of action accrued, and provided that, in the event plaintiff suffered a nonsuit, such plaintiff might commence a new action within a year from the time of nonsuit. A similar suit had been instituted within the contract period, nonsuited voluntarily, and reinstituted within the one year which was allowable as an exception to the general statute of limitations in Missouri. In passing upon the objections made to the validity of the contract provision limiting the time within which suit might be instituted, the court said: "The objection to the condition is founded upon the notion that the limitation it prescribes contravenes the policy of the statute of limitations. This notion arises from a misconception of the nature and object of statutes of this character. They do not confer any right of action. They are enacted to restrict the period within which the right, otherwise limited, might be asserted. * * * The statute of Missouri, which allows a party who 'suffers a nonsuit' in an action to bring a new action for the same cause within one year afterwards, does not effect the rights of the parties in this case. In the first place, the statute only applies to cases of involuntary nonsuit. * * * *In the second place, the rights of parties flow from the contract. That relieves them from the general limitations of the statute, and, as a consequence, from its exceptions also.* * * * [Italics by this court.] The validity of the limitations stipulated in conditions similar to the one in the case at bar, has been elaborately considered in the highest courts of several of the States, and has been sustained in all of them, except in the Supreme Court of Indiana [Eagle Ins. Co. v. Lafayette Ins. Co., 9 Ind. 443], which followed an adverse decision of Mr. Justice McLean in the Circuit Court for the district of that State [French v. Lafayette Ins. Co., Fed.Cas.No. 5,102]. Its validity has also been sustained by Mr. Justice Nelson in the Circuit Court for the District of Connecticut [Cray v. Hartford Ins. Co., Fed.Cas.No.3,375]."

692

While the precise question before the court was not a determination of the date which marks the beginning of the period of limitation, the case is highly persuasive, in that it decides the provision is a contractual one and not affected by decisions construing statutes of limitations, so many of which are referred to and relied upon in cases dealing with this question of construction. In such cases where statutes are involved, the beginning period is ordinarily the accrual of the cause of action. Contracts forbidding the institution of suits after some definitely prescribed period of time has elapsed subsequent to some event, such as filing proof of loss or discovering loss, have been mistakenly construed by some courts as though statutes of limitation, and in that way fixing a time for beginning a computation of the contractual period of limitation differing from that plainly expressed in the contract.

■ The validity of these limiting provisions has been uniformly sustained and they held to be binding contracts, and their provisions are therefore to be construed just as other insurance contracts are construed. Mechanics' Savings Bank & Trust Co. v. Guarantee Co. (C.C.) 68 F. 459; Supreme Council Catholic Knights of America v. Fidelity & Casualty Co. of New York (C.C.A.) 63 F. 48. See, also, Harvey v. Fidelity & Casualty Co. (C.C.A.) 200 F. 925.

In the case of Jackson v. Fidelity & Casualty Co. of New York, 75 F. 359, 365 (C.C.A.5) the court had before it for consideration the same provision, for practical purposes, as is here under consideration. The policy there, as here, obligated the insurer to make good defaults at the expiration of 3 months next after proof of loss, and provided that "no suit or proceedings at law or in equity shall be brought * * * to recover any amount hereby insured, unless the same is commenced * * * within the term of twelve months next after the first discovery." The declaration in that case alleged facts of a peculiar character, and a divided court held it was good against demurrer in the face of the admission therein that there had been a failure to bring the suit within the 12 months. In the majority opinion, which is interesting, the court used this language: "Justice requires that the case should be treated as one in which the running of the limitation was stopped by the conduct of the insurer itself, since

the delay was the direct result of the evil conduct from which the insurer contracted to protect the insured," thus, I think, by implication, deciding that the construction contended for by the surety here would have otherwise been adopted.

■ In the case of Thompson v. Phenix Ins. Co., 136 U.S. 287, 298, 10 S.Ct. 1019, 1023, 34 L.Ed. 408, the court approved Riddlesbarger v. Hartford Ins. Co., supra, held that the provision might be waived by the surety orally, might arise from such a course of conduct by the surety as would create an equitable estoppel, and then used this language: "It is to be observed that by the terms of the policy the company is not obliged to pay any claim until after the expiration of 60 days from * * * proofs of loss. * * * A suit, therefore, within the 60 days after the loss is so ascertained would, upon the theory of the company, be of no avail to compel payment, if it chose to plead the above clause in bar of the action. So that, practically, the assured is limited to 10 months within which he may sue as of right; and yet the 12 months within which suit must be brought are made to commence at 'the date of the fire,' not from the date when the loss is payable. There are, it is said, adjudged cases that would authorize such a construction of this policy as would give the insured the whole term of 12 months from the date when he could demand, as of right, that his claim for loss be satisfied." And there are cited a number of cases decided by state courts, and the case of Spare v. Home Mut. Ins. Co. (C.C.) 17 F. 568, 570. The Spare Case, supra, cites Riddlesbarger v. Hartford Ins. Co., supra, and construes a fire insurance policy with similar provisions as here involved, and uses this language: "This construction is supported by the decided weight of authority, and in my judgment is correct on principle. * * * The language of this policy is that of the defendant, and any ambiguity in its terms must be resolved against it. Taken literally, the clause limiting the time within which the defendant may be sued does provide that a suit on the policy must be commenced within 12 months after the loss has occurred; but the policy also provides that the loss is not payable until 60 days after proof of the fact, and even then the defendant may give notice of its intention not to pay, but to repair or replace." This case was before the court on a demurrer,

and is interesting, but not persuasive. It is typical of many cases in which it is my opinion the courts did not clearly distinguish between contractual limitation and statutory limitation. The two have no relation save where the contractual limitation undertaken by the parties is forbidden by statute or where the limitation imposed by the contract is so unfair and unreasonable that the court must strike it down. Then the statutes play a part at least as matter of aid in construction. No such insistence is or could be here made as to the provision under consideration.

 If, as said in Riddlesbarger v. Hartford Ins. Co., supra, the provision is valid, if the time limit is reasonable (Harvey v. Fidelity & Casualty Co., supra), and if the limitation is contractual, the only remaining question is whether, under the express terms employed by the contracting parties, it appears clearly that they intended to limit the period within which suit could be maintained to the 12 months next after the loss sued for was discovered by the beneficiary. I think such intent so clearly expressed as to leave no room for the rule of construction permitting doubts or ambiguities to be resolved against the party shown to have prepared the contract.

In our own circuit, in the case of Reynolds v. Detroit Fidelity & Surety Co. (C.C.A.) 19 F.(2d) 110, 112, the court had before it for consideration a policy similar, and for practical purposes the same as the one here in which loss had been discovered, giving it the most favorable aspect to the insurer, on July 8, 1924. The policy provided, as here, that proof of loss must be furnished within 90 days after its discovery. The suit was instituted September 4, 1925. Proof of loss might have been filed under the policy provisions on or before October 8, 1924, which, it will be noted, is less than 12 months before September 4, 1925. The construction contended for in the case now before the court would have brought the suit within the period of limitation contained in the policy there in suit. No such contention was made before the Court of Appeals, and the court assumed throughout the opinion that the proper construction of the policy provision was that a suit could not be maintained more than 12 months after the discovery of the loss. The trial court instructed a verdict for the defendant surety company for noncompliance on the part of the insured with the condition forbidding suit after 12 months from discovery of loss. On review the Circuit Court had the question of the propriety of such instructed verdict, and used this language: "The receiver, while admitting that this action was not brought within 12 months after the discovery of any act of larceny or embezzlement by Josephson, seeks to avoid the bar thus otherwise created by asserting that by reason of the acts of the surety in reference to the claim for reimbursement, the terms of the bond limiting the right to sue within 12 months 'were waived or suspended.'" The court affirmed the action of the trial court, saying: "In our opinion the trial court rightly directed verdict for defendant for lack of compliance with the one-year limitation for suit." See, also, Burlew v. Fidelity & Casualty Co. of New York, 64 F.(2d) 976 (C.C.A.6). It is my opinion the Sixth Circuit Court of Appeals would have reversed the District Judge in this case if the construction contended for by the insured here had been considered by it to be the proper construction of such contract provision.

This memorandum is applicable also to the case of W. E. Fuller, Receiver, v. J. H. Rader et al., No. 139 in equity, Sarah L. Butler v. W. E. Fuller, Receiver, No. 141 in equity, and to T. D. Leming v. W. E. Fuller, Receiver, No. 140 in equity, all pending in the Northeastern Division of the Eastern District of Tennessee.

In so far as relief is sought against the surety company under the same pleadings and facts in these cases, orders may be prepared for approval and entry in conformity with this opinion.