Sue WEBB and Sue K. Madelon, Plaintiffs,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant.

No. 82–2702–H.

United States District Court, W.D. Tennessee, W.D.

Jan. 30, 1984.

Charles S. Kelly, Dyersburg, Tenn., for plaintiffs.

Fred M. Ridolphi, Jr., and H. Fredrick Zimmerman, of Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HORTON, District Judge.

Plaintiffs E. Sue Webb and her daughter Sue K. Madelon filed this diversity action against defendant Insurance Company of North America (INA) alleging wrongful denial of payments on a contract of insurance. INA issued an insurance policy insuring plaintiffs' residence and the contents thereof. Plaintiffs' residence was destroyed by fire while this policy was in effect; defendant has refused to honor plaintiffs' claim for loss. Defendant has moved for summary judgment. For the reasons discussed below, the Court enters this order denying defendant's motion.

Defendant bases its motion for summary judgment on three grounds: (1) plaintiffs misrepresented their loss history in the application for the policy at issue here; (2) plaintiffs did not comply with the policy by providing timely proof of loss and itemized

inventory; (3) plaintiffs did not comply with the policy's one year limitation period.

## I. INSUREDS' MISREPRESENTATION IN POLICY APPLICATION

■ INA contends that the insureds misrepresented facts regarding their prior loss history on the application for the policy now being sued upon. INA further contends that such misrepresentation increased the risk of loss within the meaning of Tenn.Code Ann. § 56–7–103.

Plaintiffs contend Mrs. Webb was the actual applicant for the policy in issue and that Mrs. Webb correctly represented she had never experienced any prior insurance loss. Plaintiffs also contend Mrs. Madelon was added to the insurance policy as an afterthought at INA Agent Larry White's suggestion. Plaintiffs contend that after Agent White advised them to add Mrs. Madelon to the policy, he did not ask Mrs. Madelon about her prior loss history or explain that she need furnish such information.

Tenn.Code Ann. § 56–7–103 provides:

No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

If, in applying for the INA policy, the insureds made misrepresentations concerning a matter that would increase the risk of loss on the policy, then the insurer may avoid the policy. *Hammond v. Independent Life & Accident Insurance Co.,* 589 S.W.2d 913 (Tenn.App.1979). Once it has been determined that the insured made a misrepresentation, then the issue whether such misrepresentation increased the risk of loss is a question of law for the court to decide. *Collins v. Pioneer Title Insurance Co.,* 629 F.2d 429, 434 (6th Cir.1980);

*Broyles v. Ford Life Insurance Co.,* 594 S.W.2d 691, 693 (Tenn.1980).

[2] The facts submitted show that after living in Alaska for a number of years, plaintiff Webb returned to Tennessee, where her only child Sue K. Madelon lived. Mrs. Webb intended to reside permanently in Tennessee and wanted to purchase a house where she, Mrs. Madelon, Mrs. Madelon's husband and the Madelon's five children could reside together. With her own funds Mrs. Webb purchased a residence located on a 54 acre tract located at Scotts Hill, Henderson County, Tennessee. Mrs. Webb had Mrs. Madelon listed as a co-owner on the deed to the Scotts Hill property.

On February 26, 1979, apparently either the day before Mrs. Webb purchased the property or the day before plaintiffs assumed possession of it, INA's independent agent Larry White completed a commercial farm insurance policy application for the Scotts Hill property. (White deposition, pp 5–6). Agent White also visited the Scotts Hill property in connection with this initial application. (White deposition, p. 25).

Under the section of the application concerning prior losses, the word "none" was filled in by Agent White. It is now admitted by plaintiffs that Mrs. Madelon and her husband had suffered an insurance loss prior to the time the application was completed. That loss occurred when an outside storage building, located in the backyard of the Madelon's Dyersburg home, burned and $10,000 worth of wigs stored therein were destroyed. A second loss occurred six days after the INA application was completed, when fire damaged the attic and roof of the Madelon's Dyersburg house.

Mrs. Webb testified at her deposition and stated in her affidavit that at the time the INA application was completed she had never experienced any insurance loss. Defendant does not dispute this.

It is not clearly established, from the evidence before the Court, who was present when the insurance application was completed. Plaintiffs, and perhaps Mr. Ma-

delon, visited Mr. White in his office to answer the questions for the policy application. Plaintiffs contend that their initial intent was for Mrs. Webb to apply for the INA insurance. Mrs. Webb planned to reside at the Scotts Hill property, but she first had to return to Alaska to complete some business. During Mrs. Webb's absence, the Madelon family planned to live at the Scotts Hill house. Learning of this, Agent White advised "that plaintiff Madelon be listed on the deed as co-owner with her mother in order for the property to be covered by the insurance, as INA required one of the named insureds to live in the insured property." (Defendant's 7/22/83 Memo, p. 4). Agent White listed both Mrs. Webb and Mrs. Madelon as insureds under the policy. Neither insured was required to sign the policy application and there is no evidence before the Court to indicate that Agent White explained to the insureds the implications of naming Mrs. Madelon as an additional insured on the policy.

In interpreting Tenn.Code Ann. § 56–7–103, the Tennessee Supreme Court has held that

> the concept of "misrepresentation" is totally distinct and separate from the concepts of "intent to deceive" or "increase in the risk of loss." The latter elements are not analyzed at all until and unless a matter has been "misrepresented." ...
> In order to determine whether a matter has been *mis*represented, it must first be determined what the insurer asked, required, or expected the applicant to represent.

*Gatlin v. World Service Life Insurance Company*, 616 S.W.2d 606, 608 (Tenn.1981) (emphasis in original).

Based on the information before the Court, one could reasonably conclude that Mrs. Webb purchased the Scotts Hill property with her own funds and invited her daughter, son-in-law and their children to reside there with her. One could further conclude that based on the advice of INA's Agent White, Mrs. Webb listed Mrs. Madelon as co-owner on the deed solely to guarantee insurance coverage during Mrs.

Webb's temporary absence. The Court believes there are genuine issues of material fact regarding: (1) whether Agent White addressed the insurance application questions to Mrs. Webb, Mrs. Madelon, or both; and (2) whether Agent White explained the ramifications of his advice that Mrs. Madelon be made a co-owner and an insured. Although plaintiffs need not have acted with the intent to deceive in order for INA to avoid the policy, *Lane v. Travelers Indemnity Co.*, 499 S.W.2d 643, 647 (Tenn. App.1973), it is necessary to determine that there was a misrepresentation. This can be done only by determining "what the insurer asked, required, or expected the applicant to represent." *Gatlin v. World Service Life Insurance Co., supra.* The Court finds that there are genuine issues of material fact regarding what Agent White asked plaintiffs, which plaintiffs were asked which questions and what Agent White expected plaintiffs to represent. Thus, defendant's motion for summary judgment on this ground is denied.

## II. PLAINTIFFS' FAILURE TO FURNISH PROOF OF LOSS

■ Defendant contends the policy requires the insureds to furnish sworn proof of loss of their claim within sixty days of the loss. Defendant contends plaintiffs have not furnished such proof of loss. Defendant also contends the policy requires plaintiffs to furnish an inventory of the contents destroyed by the fire as a prerequisite for filing any action based on the loss. Defendant contends plaintiffs did not file such inventory until two years after the loss. Because of plaintiffs' failure to comply with these policy requirements, defendant contends INA is entitled to summary judgment.

Plaintiffs contend they advised INA of their loss within two days of the fire. Plaintiffs contend that, shortly after the fire, plaintiffs were informed by C.J. Pruett, an adjuster for the General Adjustment Bureau retained by INA to investigate the loss, that INA would not pay plaintiffs' claim. Plaintiffs contend they

made every effort to comply with the policy provisions and after Mr. Pruett informed them of INA's intentions to avoid the policy, plaintiffs retained legal counsel to assist them in recovering on the policy.

The fire at the Scotts Hill property occurred on April 14, 1980. Agent White testified that the day after the fire plaintiffs notified his office of the loss and his employees then notified INA's claims department in Memphis, Tennessee. INA's Memphis branch office claims manager John Turner testified that INA received prompt notice of the total loss of plaintiffs' residence and its contents. (Turner deposition, pp. 32–33).

INA bases its motion on plaintiffs' failure to comply with the policy's requirement that:

SUIT—No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless commenced within 12 months next after discovery by the insured of the occurrence which gives rise to the claim.

.    .    .    .    .

REQUIREMENTS IN CASE LOSS OCCURS—The Insured shall give immediate notice to the police of loss by burglary, theft or hold up and immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days, after the loss, unless such time is extended in writing by this Company, the Insured shall render to this Company a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following: the time and origin of the loss, the interest of the Insured and of all others in the property, the actual cash value of each

item thereof and the amount of loss thereto ... (emphasis added).

INA filed the affidavit of D.C. Parker, Branch Manager of General Adjustment Bureau (GAB), Jackson, Tennessee. (INA retained GAB to handle the investigation and processing of plaintiffs' fire loss claim.) In the affidavit, D.C. Parker stated that shortly after the fire plaintiffs were provided with inventory forms to complete and that neither Parker nor his office ever received any contents inventory list from insureds for the personal property allegedly destroyed. Parker further stated that the only sworn proof of loss forms received by Parker or his office were two "Proof of Loss for Advance Payment" for living expenses.

Exhibits to the deposition of John Turner of INA show that as early as two weeks after the Scotts Hill fire, there was disagreement between INA and plaintiffs regarding the face amount of the INA policy. Mr. C.J. Pruett of GAB corresponded with plaintiffs' counsel about Proof of Loss for Advance Payment on May 19, 1980. Subsequently plaintiffs' counsel facilitated plaintiffs' signing the proof of loss form provided by Mr. Pruett, while preserving plaintiffs' right to contest the amount of the policy. Although INA knew as early as May 1, 1980, that plaintiffs were represented by counsel in this matter, there is no evidence that INA requested sworn proof of loss from plaintiffs via their attorney.

In support of its position, INA directs the Court to two Tennessee Supreme Court cases. The Court finds neither case apposite. In *Central National Insurance Company of Omaha v. Manufacturers Acceptance Corp.*, 544 S.W.2d 362 (Tenn. 1976), plaintiff MAC held a chattel mortgage on a motorcycle owned by the insured. The motorcycle apparently had been stolen, and MAC, as the loss payee, sued the insurer to collect on the policy. The insured refused to "give notice, file a proof of loss or otherwise comply with the stipulations of the policy," and the Court held that the breach of these conditions prevented MAC from recovering on the

policy. *Id.* at 363, 364. The insured in *Central National Insurance Company, supra,* had "failed, without excuse, to file a sworn proof of loss and [had] refused to respond to repeated requests of the insurer that he make himself available to the Company for discussions of the alleged loss." *Id.* at 364. That is clearly not the case here. Mrs. Webb and Mrs. Madelon corresponded with the insurer almost immediately after the fire. They permitted their depositions to be taken within a few weeks of the filing of legal action on the policy. Moreover, there is no evidence that INA requested further proof of loss after submission of the proof of loss for expenses.

The second case relied on by plaintiffs is *Georgia Home Insurance Co. v. Jones,* 23 Tenn.App. 582, 135 S.W.2d 947 (1939). There the Tennessee Court of Appeals distinguished between notice of loss and proof of loss and held that, although plaintiff had provided the defendant insurer with notice of loss, plaintiff's failure to provide proof of loss barred plaintiff from suing on the policy. But the Tennessee Court of Appeals pointed out that policy stipulations requiring proof of loss and notice of loss may be waived by the insurer. An insurer will be held to have waived the policy requirements

> where the conduct of the company has misled, and was such as might well have misled, a reasonably prudent [person]; or where it is manifest that the company had already been put in possession of all the information that said clause was intended to furnish, and made no request for more specific details, until after the lapse of an unreasonable time, leaving the insured to suppose that no further demands would be made.

*Id.* 135 S.W.2d at 952 (citation omitted). The Tennessee Courts have held that an insurer's denial of liability will waive the policy's requirement regarding notice and proof of loss.

> " * * * 'A denial of liability by an insurer, made during the period prescribed by the policy for the presentation of proofs of loss, and *on grounds not relat-*

*ing to the proofs* [emphasis supplied], will ordinarily be considered a waiver of the provision of the policy requiring the proofs to be presented. * * *. The denial of liability is equivalent to a declaration that the insurer will not pay although proofs are furnished in accordance with the policy, and the law will not require the doing of a vain or useless thing. * * *'" *Williams v. Home Fire & Marine Ins. Co. of California,* C.A. Tenn. (1941), 25 Tenn.App. 351, 353, 157 S.W.2d 845, 847[2], certiorari denied (1942), quoting from 29 Am.Jur. 859, § 1143, and citing *Ligon's Administrators v. Equitable Fire Insurance Company,* (1889), 87 Tenn. 341, 10 S.W. 768; *Insurance Co. v. Norment* (1891), 91 Tenn. 1, 18 S.W. 395.

*Grider v. Travelers Indemnity Co.,* 315 F.Supp. 616, 617 (E.D.Tenn.1969), affirmed, 429 F.2d 1405 (6th Cir.1970), (applying Tennessee law).

Here INA's denial of liability may be held to waive the policy provisions regarding proof of loss, thus INA is not entitled to judgment as a matter of law on this basis.

### III. STATUTE OF LIMITATION

INA contends it is entitled to summary judgment as a matter of law because the instant action was not filed within the policy's one year limitation period.

Plaintiff contends that the one year limitation period was complied with, or, in the alternative, that the policy limitation period is void as against public policy and Tennessee's six year statute of limitation relating to contracts should be applied to the instant action.

The policy provides:

> No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with and unless commenced within 12 months next after discovery by the insured of the occurrence which gives rise to the

claim. Provided, however, that if by the laws of the state within which this policy is issued, such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state.

In compliance with this provision plaintiffs filed an action in the Circuit Court for Henderson County, Tennessee, about October 1, 1980—less than seven months after the Scotts Hill fire. Defendant was served with notice of the action and the parties engaged in discovery as early as November, 1980. By September of 1982 a date had not been set for trial despite attempts by plaintiffs' counsel to have the case set on the Circuit Court's docket. Because the continued delay was exacerbating their situation, plaintiffs via their counsel took a voluntary nonsuit in the state court proceeding about September 9, 1982, and filed the instant federal suit based on the same cause of action on September 20, 1982. Defendant asserted a statute of limitation defense in its October 18, 1982, answer to the federal complaint.

By filing suit in Circuit Court within seven months of the Scotts Hill fire, plaintiff complied with the policy's limitation period. Defendant argues, however, that because the Circuit Court action was dismissed and this federal court action then filed more than one year after the Scotts Hill fire, this action is barred.

It is important to note that the one year limitation period dealt with here is a contractual limitation period—not a statutory limitation period. The Tennessee courts have long recognized that parties to an insurance contract may provide a limitation period in their contract. *Guthrie v. Indemnity Assoc.*, 101 Tenn. 643, 49 S.W. 829 (Tenn.1899); *Hill v. Home Insurance*, 22 Tenn.App. 635, 125 S.W.2d 189 (1938). This Court therefore finds the policy's one year limitation period valid. (Had the parties not chosen to provide in their contract a one year period of limitation, then the courts of Tennessee would apply the six year statute of limitation applicable to contracts. *See* Tenn.Code Ann. § 28–3–109. Further, were a statutory limitation period applicable here, the Tennessee savings statute, Tenn.Code Ann. 28–1–105, would apply to make timely the instant action. *Guthrie v. Indemnity Assoc., supra.*)

Although the Court finds the policy's one year limitation period valid and finds the savings statute does not apply to any action based on the policy, the Court does not find as a matter of law that the action is barred. In a diversity action such as this, the federal court is to apply Tennessee law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties have not cited, nor has the Court located, any Tennessee case addressing the precise situation presented here.[1] The Court must therefore look to the principles espoused by the Tennessee courts and apply those principles to this case.

When there is no ambiguity in an insurance contract, a court must construe the insurance contract just as it would any other contract, i.e. by its plain meaning with no application of strictness in favor of either party. *In re Estate of Clement*, 220 Tenn. 114, 414 S.W.2d 644 (1967); *Union Planters Corp. v. Harwell*, 578 S.W.2d 87, 92 (Tenn.App.1978). Any ambiguity, however, must be resolved against the drafter

---

1. The holding of the Tennessee Supreme Court in *Guthrie v. Indemnity Assoc., supra*, is not contrary to the result reached by this Court in the case at bar. In *Guthrie* plaintiff sued defendant insurer in November, 1895, within one year of the death of insured, as required by the policy. Service was made on the Tennessee Commissioner of Insurance, but the insurer was not doing business in Tennessee so the Commissioner was not authorized to accept service on behalf of the insurer. Based on this lack of service, plaintiff's suit was dismissed in December, 1896. Plaintiff filed a new action in May, 1987, and this time the insurer was properly served. The Tennessee Supreme Court held the second action barred by the policy's one year limitation clause on two grounds. First, the Tennessee saving statute applied only to statutory limitation periods and did not apply to the contractual limitation period. Second, the limitation period was not tolled by the insurer's failure to have an agent for service of process within the State.

of the contract. *Id.* This does not mean that a court must ignore common sense when interpreting an insurance policy.

A contract of insurance should be given a fair and reasonable construction; and likewise should be given a sensible construction, consonant with the apparent object and plain intention of the parties; a construction such as would be given the contract by an ordinary intelligent business man; and a practical and reasonable rather than a literal construction. The contract should not be given a forced, unnatural or unreasonable construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion or render the policy nonsensical and ineffective. 44 C.J.S. Insurance, § 296, pp. 1163, 1164, 1165.

*Dixon v. Gunter,* 636 S.W.2d 437, 441 (Tenn.App.1982).

The Tennessee Supreme Court, in construing an insurance policy, recently stated:

In construing contracts of insurance, we attempt to ascertain the intent of the contracting parties and, since the policy was drafted by the insurance company, we must resolve all ambiguity and doubt in favor of the insured. We need not abandon common sense; indeed, we are required to exercise common sense in construing these policies.

*Palmer v. State Farm Mutual Automobile Insurance Co.,* 614 S.W.2d 788, 789 (Tenn.1981).

Because the Tennessee Supreme Court has taken the position that in construing contracts of insurance, a court should ascertain the intent of the parties, *id.,* this Court has examined the reason for the one year limitation in the INA policy.

Generally, the purpose of a contractual limitation period is to provide the insurer with prompt notice of any claims against it. After passage of the requisite time, the insurer may safely assume that any claims brought against it will be barred as stale. Such contractual planning enhances the management of an insurer's business affairs and prevents an insurer from being surprised by the assertion of a loss claim long after the loss has occurred. The one year limitation period increases the probability that the insurer will be able to investigate the loss while the incident is still fresh on the minds of witnesses and witnesses are still available.

In the case at hand INA knew of plaintiffs' claim against it within two days of the Scotts Hill fire. INA, through its own employees and through GAB, initiated an investigation of the fire underlying plaintiffs' claim almost immediately. Within seven months of the fire plaintiffs filed suit in Circuit Court on their claim. Discovery commenced shortly after the Circuit Court action was filed; in fact, depositions were taken as early as November 10, 1980. Moreover, plaintiffs' voluntary nonsuit in the Circuit Court action did not mislead INA into believing that the controversy had been resolved. Rather, plaintiffs' counsel advised INA of plaintiffs' reasons for nonsuiting the Circuit Court action and of plaintiffs' intention to file in this Court an action based on the same subject matter.

INA has not asserted that plaintiffs' nonsuiting the action in Circuit Court and refiling the action in this Court has in any way prejudiced INA. In fact, it is likely that having the action filed in this Court has been more convenient for INA and its Memphis counsel than was defending the action in the more distant Henderson County forum.

Based on the situation presented here, the Court finds the purpose of the policy's one year limitation clause was to provide that the insurer would receive prompt notice of actions against it and would be able to ascertain its exposure to legal action arising from policy disputes. The Court finds plaintiffs complied with the policy's limitation provision by commencing their action in Circuit Court less than seven months after the Scotts Hill fire. The Court further finds plaintiffs did not violate the policy's limitation provision by vol-

untarily dismissing the Circuit Court action due to an inability to get the case on that Court's docket and within two weeks filing this suit asserting identical claims based on the same cause of action. The Court therefore holds defendant INA is not entitled to judgment as a matter of law based on the policy's limitation period.

## CONCLUSION

It appearing to the Court that there are genuine issues of material fact and that defendant INA is not entitled to judgment as a matter of law, the Court hereby orders defendant's motion for summary judgment be denied.