The FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for Knox Federal Savings & Loan Association, Plaintiff,

v.

The AETNA CASUALTY & SURETY CO., a Connecticut Corporation, Defendant,

v.

J. Garrett BURDETTE, et al., Third–Party Defendants.

Civ. A. No. 3–88–132.

United States District Court, E.D. Tennessee, N.D.

Dec. 12, 1988.

Ronald C. Koksal, Butler Vines Babb & Threadgill, J. Michael Winchester, Lacy & Winchester, P.C., David L. Buuck, Michael M. Downing, Claiborne Davis Buuck & Hurley, Charles A. Wagner, III, Wagner Myers & Sanger, P.C., R. Franklin Norton, Norton & Luhn, P.C., Steven Oberman, Daniel & Oberman, Knoxville, Tenn., Arnold Tackett, Chattanooga, Tenn., Charles W.B. Fels, Ritchie Fels & Dillard, P.C., Knoxville, Tenn., for J. Garrett Burdette, et al.

Elizabeth S. Tonkin, Walt Dyer & James, Knoxville, Tenn., for Federal Sav. & Loan Ins. Corp.

William B. Luther, Luther Anderson Clearly Ruth & Speed, Chattanooga, Tenn., for Aetna Cas. & Sur. Co.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This matter comes before the court on Aetna's motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1] The parties having fully briefed the issues, and the court having heard argument on the motion in Knoxville, Tennessee, on July 18, 1988, this motion is now ready for resolution.

*Facts*

On May 1, 1982, a savings and loan blanket bond which Aetna issued to the now defunct Knox Federal Savings & Loan Association (Knox) went into effect. Of particular relevance to the instant motion is the following language found in Section 4 of that bond, which reads as in pertinent part:

At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars. If claim is made under this bond for loss of securities, the Underwriter shall not be liable unless each of such securities is identified in such proof of loss by certificate or bond number. *Legal proceedings for recovery of any loss hereunder shall not be brought prior to the expiration of sixty days after such proof of loss is filed with the Underwriter nor after the expiration of twenty-four months from the discovery of such loss,* except that

any action or proceeding to recover hereunder on account of any judgment against the Insured in any suit mentioned in General Agreement C or to recover attorneys' fees paid in any such suit, shall be begun within twenty-four months from the date upon which the judgment in such suit shall become final.

(Emphasis added). Pursuant to provisions contained in this bond and prior to its expiration, Knox requested that the period in which losses could be discovered under this bond be extended, and on December 18, 1983, an agreement was entered into by Knox and Aetna extending this discovery period for one year, and also containing the following proviso:

[T]he Underwriter hereby grants to the Insured a period of 12 months from ... the 18th day of December, 1983, to ... the 18th day of December, 1984, within which to discover loss sustained by the Insured.... Such additional period of time shall terminate immediately ... upon takeover of the Insured's business by any State or Federal official or agency, or by any receiver or liquidator, acting or appointed for this purpose without the necessity of the Underwriter giving notice of such termination.

On December 12, 1983, Knox sent a notice of loss to Aetna indicating that losses covered by the bond had been discovered. On April 13, 1984, Knox followed upon this notice with the filing with Aetna of two proofs of loss. The first was for approximately $1.4 million,[2] and the second for $328,048.14, an alleged loss caused by the "apparent dishonesty" of former Knox president, Arnold Tackett (referred to as Proof # 1). Accompanying these proofs was a letter by Knox President Richard B. Alexander, stating that Knox was reserving the right to file further proofs of loss as more losses were discovered. Indeed,

---

1. On November 17, 1988, Aetna filed a motion for partial summary judgment concerning Count II of the complaint. This motion repeats the arguments made by Aetna in its May 5, 1988, motion for summary judgment which is the subject of this order. Consequently, this order disposes of the November 17 motion as well.

2. While this proof for $1.4 million was originally part of the complaint in this case, in its response to the Aetna motion the FSLIC has indicated that it no longer seeks recovery in this action for this $1.4 million loss. Consequently, the court will give this particular proof of loss no further attention.

on July 25, 1984, another proof of loss was filed (referred to as Proof # 2), again alleging dishonesty by certain Knox employees, this time to the sum of $13,189,670. Shortly thereafter, on August 6, 1984, Aetna wrote to Knox acknowledging the receipt of the three proofs of loss, and requesting information related to these proofs so that these claims could be investigated.

On November 16, 1984, the FSLIC was appointed receiver of Knox. As a result of this action, a new federal savings and loan was chartered to take over some of the Knox accounts, and to facilitate this process audits were conducted of all Knox branches. The audit of the West Town branch revealed some irregularities, and the auditors scheduled a meeting at that branch on December 13, 1984. That morning, Linda Collins, the assistant manager of that branch, committed suicide, and subsequent audits revealed an embezzlement scheme involving Collins and the West Town branch manager, Merele Wyrick. As of that date the FSLIC receiver concluded that another loss had been suffered under the Aetna bond, and a notice of loss was sent to Aetna on February 19, 1985. On March 13, 1985, Aetna informed the FSLIC that this claim was not valid under the bond. This action was based on Aetna's claim that the discovery occurred after the FSLIC was appointed receiver, and that persuant to the terms of the agreement between Knox and Aetna the time within which discovery of losses must occur ended at the time FSLIC became receiver for Knox (November 16, 1983). On August 16, 1985, the FSLIC submitted a proof of loss on the Collins/Wyrick loss (referred to as Proof # 3) indicating a loss of $1.1 million.

On March 25, 1986, a formal "time freeze" agreement was entered into by Aetna and the FSLIC, providing that if any action under the bond was filed by the FSLIC by September 30, 1986, it would be treated as if it had been filed on March 25, 1986. This agreement was extended several times, with the final extension providing that the FSLIC action could be filed as late as February 28, 1988, and still be considered to have been filed on March 25, 1986. Aetna formally denied Proofs # 1 and # 2 on August 20, 1986, after several requests had been made by Knox and the FSLIC for a report on the status of these claims. Subsequently, the FSLIC filed the instant action on February 24, 1988, seeking recovery under the Aetna bond. This complaint contains two counts, the first relating to Proofs # 1 and # 2, and the second count dealing with Proof # 3.

*Discussion*

Summary judgment under Fed.R.Civ.P. 56 is appropriate when the record, taken as a whole, could not led a rational trier of fact to find for the non-moving party. In such a case there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, all inferences drawn from the facts must be viewed in a light most favorable to the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. However, a movant need not negate every aspect of the non-movant's claim, it need only support its claim that there is no genuine issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

While the Aetna motion raises several questions, some legal and some factual, at the core of the motion is the twenty-four month limitation period from "discovery of such loss" for bringing an action for recovery under the bond which is set out above. The parties do not agree as to applicable dates of discovery of losses represented in the three instant proofs of loss,[3] and both

---

3. While the parties seem to agree that the date of discovery of the losses represented by Proof # 1 is October 25, 1983, and the date of discovery for the Proof # 3 loss is December 13, 1984, the parties disagree over the date of discovery relevant to Proof # 2. Aetna contends it

is October 25, 1983, a date that is mentioned in Proof # 2, and the FSLIC claims it is May 31, 1984, based on the affidavit of Richard Alexander. The court is unable at this time to conclude that there is no genuine issue of material fact as to this dispute, but for the purposes of

sides attempt to blame the other for any delays in the resolution of the Know claims caused by the Aetna investigation of these claims.[4]

A two-step analysis is appropriate in resolving the questions at issue in this motion. First, how should the bond language in question be interpreted, particularly in light of what occurred after the proofs of loss were filed? Second, applying the appropriate methods of interpretation to each proof at issue, is a claim based on a loss outlined in a particular proof time-barred?

### I. *Interpretation of the bond limitations period*

█ Aetna argues that the bond limitations language should be read literally, therefore, two years from the date of discovery of a loss the right to sue Aetna on that loss expires, no matter what happens during that two years. The FSLIC responds that the two-year period does not begin to run until a cause of action against Aetna accrues, and under the relevant bond language that is not until sixty days after the proof of loss is filed. Alternatively, the FSLIC contends that Aetna waived any right to assert this bond limitations language because it failed to act one way or the other on the Knox claims prior to two years after the losses were discovered.

In the absence of a statutory provision to the contrary, in an action between the insured and the insurer, the validity of a provision in an insurance policy requiring suit under the policy within a prescribed period cannot be disputed. *Thompson v. Phenix Inc. Co.*, 136 U.S. 287, 298, 10 S.Ct. 1019, 1023, 34 L.Ed. 408 (1890); *Arcon Corp. v. Liberty Mutual Ins. Co.*, 591 F.Supp. 15, 18 (M.D.Tenn.1983). In Tennessee, such contractual limitations provisions have been declared valid and not contrary to any statute or public policy. *Webb v. Insurance Co. of North America*, 581

F.Supp. 244, 250 (W.D.Tenn.1984); *Hill v. Home Insurance Co.*, 22 Tenn.App. 635, 125 S.W.2d 189, 192 (1939). It should also be noted that under Tennessee law, insurance contracts are not to be strictly construed against the insurer unless an ambiguity in the contract language is found, *Webb*, 581 F.Supp. at 250–51; *Union Planters Corp. v. Harwell*, 578 S.W.2d 87, 92 (Tenn.App.1978), and that in interpreting a contract a practical and reasonable, rather than a literal or forced, construction is appropriate. *Webb*, 581 F.Supp. at 251; *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn.App.1982).

When called upon to interpret contract limitation periods, the courts have adopted one of different approaches to solving the problems presented.

The first approach is that forwarded by Aetna, and is essentially a "literal" contract interpretation. Under this analysis, insurance limitation periods must be read literally, so if a contract says two years from the date of discovery, two years is all that is allowed regardless of subsequent events.

The second approach, and one suggested by the FSLIC, is what could be called an "accrual" method. Under this analysis, the contractual limitations period does not begin on the date of discovery or loss, as the case may be, but at the point the insurer is no longer immune from suit, or as otherwise stated, when the insured's cause of action against the insurer accrues. *Westchester Fire Insurance Co. v. Sperling*, 421 F.2d 141, 142 (9th Cir.1970); *Insurance Co. v. Scales*, 101 Tenn. 628, 641, 49 S.W.2d 743 (1899); *Phoenix Insurance Co. v. Brown*, 53 Tenn.App. 240, 381 S.W.2d 573, 574 (1964); *Hill v. Home Insurance Co.*, 125 S.W.2d at 192; *Reeser v. Home Fire Insurance Co.*, 5 Tenn.App. 395, 400 (1926). Under this approach, the FSLIC

discussion as to this motion only, the court will assume that the date of discovery concerning Proof # 2 is October 25, 1983.

**4.** The evidence available to the court at this time regarding requests by Aetna for documentation from Knox and the FSLIC so as to enable it to investigate the instant claims under the bond,

and the Knox and FSLIC responses to these requests, is inconclusive as to which, if any, party is "to blame" for delays in the adjustment of these claims. As such, the court will not attempt to attach responsibility for any delays to either party in this order.

claims against Aetna can not accrue until sixty days after the proofs of loss have been filed, because until that point the FSLIC is not permitted to file suit against Aetna.

The third approach, also forwarded by the FSLIC, involves a type of waiver analysis. Under this reasoning, where the insurer lulls the insured into inaction by promises of, or negotiations for, payment under a claim, or fails to deny liability until after a contractual limitations period has expired, the insurer is barred from asserting as a defense that the period has expired. *Cange v. Stotler & Co.*, 826 F.2d 581, 588 (7th Cir.1987); *William H. Sill Mortgages, Inc. v. Ohio Casualty Insurance Co.*, 412 F.2d 341, 346 (6th Cir.1969); *O'Brien v. Country Mutual Insurance Co.*, 105 Ill. App.2d 21, 245 N.E.2d 30, 32 (1969) (if the insurer holds out reasonable hope of adjustment and therefore deters the insured from bringing suit, the limitation period is waived); *Huff v. Travelers Indemnity Co.*, 266 Ind. 414, 363 N.E.2d 985, 992 (1977); *Trinity Universal Insurance Co. v. Howeth*, 419 S.W.2d 704, 708 (Tex.App.1967) (will not permit insurer to lull insured to sleep by causing insured to believe that company is in good faith attempting to adjust the claim). Under this approach, waiver can be found from the insurer's acts, as well as its words, *Schafer v. Buckeye Union Insurance Co.*, 178 Ind.App. 70, 381 N.E.2d 519, 522 (1978); *Commonwealth v. Transamerica Insurance Co.*, 462 Pa. 268, 341 A.2d 74, 76–77 (1975), and it will not take much evidence to establish a waiver of this type of limitations period, nor will the technical elements of estoppel or waiver have to be satisfied. *O'Brien*, 245 N.E.2d at 31–32; *Schafer*, 381 N.E.2d at 522.

The fourth and final alternate approach is a "tolling" analysis. According to this approach, the contractual limitations begins at the time set out in the contract (in this regard this approach agrees with Aetna's literal approach), but the period is tolled between the time the notice of loss is sent to the insurer until the insurer denies liability. *Solomon Lieberman v. Interstate Fire & Casualty Company*, 768 F.2d 81, 82 (3d Cir.1985); *Impex Agricultural Commodities v. Leonard Parness Trucking*, 582 F.Supp. 260, 263 (D.N.J.1984); *Nicholson v. Nationwide Mutual Fire Insurance Co.*, 517 F.Supp. 1046, 1051 (N.D.Ga. 1981); *Thomas v. Reliance Insurance Co.*, 396 Mich. 588, 593–97, 242 N.W.2d 396 (1976). The rationale behind this approach is best expressed in the following quote from *Peloso v. Hartford Fire Insurance Co.*, 56 N.J. 514, 267 A.2d 498, 501 (1970):

> In this manner, the literal language of the limitation provision is given effect; the insured is not penalized for the time consumed by the company while it pursues its contractual and statutory rights to have a proof of loss, call the insured in for examination, and consider what amount to pay; and the central idea of the limitation provision is preserved since an insured will have only 12 months to institute suit. We think this approach is more satisfactory, and more easily applied, than the pursuit of the concepts of waiver and estoppel in each of the many factual patterns which may arise.

After analyzing the four alternatives discussed above, the court concludes that a combination of the "literal" and tolling approach is the most analytically sound, and it is the most compatible with the contract limitations language in question, yet does not deal harshly with either party as could be true if tolling were not permitted. There are cases, however, when the waiver analysis would be quite acceptable, as it too does not blind itself to events that occur after the contract is entered into which are relevant to the question of coverage.[5] The "accrual" method stretches the contractual

---

**5.** Aetna argues that the waiver approach is not appropriate as waiver cannot create a contract of insurance, and the insurer should not be liable for coverage for which it has received no consideration. *African Trading International v. Fireman's Fund Insurance Co.*, 583 S.W.2d 607, 609–10 (Tenn.App.1979). This argument is not persuasive, as Aetna received consideration for the coverage of the losses at issue, and no "additional" coverage is created by the application of waiver to this case. Indeed, what is at issue is a forfeiture provision which seeks to eliminate coverage which the bond would normally include.

language more than should be the case, though this is the approach most supported by Tennessee law.[6] The "literal" approach without tolling is unacceptable for several reasons. First, this seems to be a dated approach, and is not consistent with more contemporary analyses of contractual limitation periods in insurance policies.[7] Second, this literal reading of contract language is not logically sound, as it results in a limitations period running against a party even though that party may not have been able to bring suit during part of that period. For example, as to Proof # 1, this reasoning would hold that the limitations period began to run on October 25, 1983, yet under the bond language the FSLIC could not have brought suit sooner than sixty days after the proof of loss was filed, on June 13, 1984. This results in a twenty-four month limitations period being effectively shortened to a sixteen-month period, and this is simply not consistent with the policy language. Accordingly, the court will apply each of the other approaches to the underlying facts of the three proofs of loss at issue in this litigation.

## II. *Specific proofs of loss in question*

Before discussing each proof individually, it is important to note the effect the time freeze agreement of March 25, 1986, will have on these determinations. Since the instant complaint was filed before the time freeze deadline, this case is treated as if it was filed on March 26, 1986. Therefore, if the contractual limitations period had not expired for a given proof of loss by March 26, 1986, the claim related to that specific proof of loss is not time-barred.

### A. *Proof # 1*

■ Under any of the three approaches discussed above, the claim related to this proof is not time-barred. Under the accru-

al approach, the two-year limitations period did not commence until two months after April 13, 1984, the date on which the proof of loss was filed. From that point, less than two years had passed until the time freeze went into effect, therefore the FSLIC claim is timely. The same result may result under the waiver approach, as Aetna did not deny the claim related to this proof until close to one year after the two-year period had elapsed, being measured from the date of discovery. Consequently, it could be claimed that Aetna has waived this defense. Finally, the tolling analysis also leads to the conclusion that this claim is not time-barred, as the two-year limitation ran from discovery until proof of loss was filed (December 22, 1983 to April 13, 1984), and then was tolled until August 20, 1986, when Aetna formally denied this claim. Two years had not expired by March 26, 1986, the date of the time freeze.

### B. *Proof # 2*

The results here are the same as for Proof # 1. The proof was not filed until July 28, 1984, therefore the two-year period did not begin to run until September 28, 1984, and from that point less than two years expired before the time freeze went into effect. Thus, under the accrual approach there is no limitation problem. The waiver analysis is the same as it was for Proof # 1 because both proofs were formally denied by Aetna after the two-year period had expired. Similarly, under a tolling approach there are no time problems. Discovery accrued about May 31, 1984, and the proof of loss was filed July 25, 1984. This proof was denied August 20, 1986, after the time freeze had already gone into effect.

### C. *Proof # 3*

■ There is no doubt that this claim is not time-barred, as this loss was discovered

---

6. Aetna claims that the cases supporting the accrual approach are not applicable because they involve limitations periods running from the date of the loss, rather than the date of discovery of the loss. The court is not persuaded by this argument, as Aetna does not explain why this should make a difference, as the key is not when the running of the limita- tions period is triggered but, rather, when the insurer's immunity from suit ends.

7. The only case cited by Aetna in support of this approach is *Holland v. Fuller*, 14 F.Supp. 688 (E.D.Tenn.1936), and this case had never been followed or cited for this proposition in any published opinion, and many Tennessee and other cases have since held to the contrary.

in December of 1984, and even under Aetna's more restrictive literal approach, the time freeze agreement was already in effect prior to the expiration of the two-year limitations period. However, a different issue arises as to this proof of loss. The December 18, 1983, agreement extends the period of time for the insured to discover losses under the bond for an additional year. According to this agreement, this extension of time granted an additional year for Knox to discover losses but terminated on the date the FSLIC took over as receiver of Knox on November 16, 1984. Thus, by its terms, the agreement granted less time to Knox's successor, charged with protecting the public through the receivership and succeeding to all the rights and powers of Knox, to discover losses than Knox had. Aetna contends that because this loss was discovered after the date of receivership, it was discovered after the bond effectively expired, and as such the loss is not covered under the bond. The FSLIC responds that the language in question is void as against public policy to the extent that it restricts the rights of the FSLIC to a greater extent than Knox itself was restricted, and as such the FSLIC is not barred from asserting this claim.

The FSLIC is given broad rights under federal statutes and regulations. *See* 12 U.S.C. § 1729(d) (the FSLIC has the power to settle and compromise bank claims); 12 C.F.R. § 547.7 (the receiver succeeds to all the rights and powers of the defunct association); 12 C.F.R. § 549.3(a). The FSLIC as receiver of a failed institution has all the rights and powers of that institution, *FSLIC v. Oldenburg,* 671 F.Supp. 720, 723 (D.Utah 1987); *First Savings & Loan Association v. First Federal Savings & Loan Association,* 531 F.Supp. 251, 256 (D.Hawaii 1981), and that any attempts to restrict the exercise of these rights by the FSLIC are void and unenforceable. *Oldenburg,* 671 F.Supp. at 723. *See also Connolly v. Union Sewer Pipe Co.,* 184 U.S. 540, 547, 22 S.Ct. 431, 434, 46 L.Ed. 679 (1902).

The court believes that the contract language in question between Aetna and Knox is void as against public policy as it restricts the exercise of Knox's rights by the FSLIC. It purports to take away from the receiver rights that Knox would have had against Aetna had there been no receivership. Had the agreement provided that neither Knox nor the FSLIC could discover losses after a certain date, then it would be valid and enforceable as Knox would be bargaining away its rights, and the FSLIC's rights as well. However, that is not the case here. Knox bargained away FSLIC rights while retaining these same rights for itself. Had Knox not gone into receivership there would be no doubt that the contract language in question would not prevent it from bringing suit to recover under Proof # 3. Yet, this same language would bar the FSLIC from bringing the same action. This is clearly an infringement on the power of the FSLIC to act as a receiver of a failed institution, and this contract language is void and unenforceable. Consequently, the FSLIC is not barred from bringing this action to recover under Proof # 3.

*Conclusion*

Under any of the three acceptable means of interpreting and applying the instant bond contractual limitations period, the claims brought by the FSLIC are not time-barred. In addition, the contract proviso that would have barred the FSLIC claim under Proof # 3 is void because it violates public policy. Accordingly, Aetna's motion for summary judgment is DENIED.